**UNITED STATES of America,**
**Plaintiff,**

v.

**State of NEVADA; Nevada State Department of Conservation and Natural Resources; Peter G. Morrows, in his official capacity as Director, Department of Conservation & Natural Resources; and R. Michael Turnipseed, P.E. in his official capacity as State Engineer for the State of Nevada, Defendants.**

**No. CV–S–00–268–RLH(LRL).**

United States District Court,
D. Nevada.

Sept. 21, 2000.

Stephen G. Bartell, Lois J. Schiffer, U.S. Department of Justice, Environment & Natural Resources Div., Washington, DC, Blaine Welsh, U.S. Attorney—Las Vegas, Las Vegas, NV, for United States of America, plaintiff.

Paul Taggart, Nevada Attorney General's Office, Carson City, NV, for Morros, Peter G., defendant.

Marta Adams, Nevada Attorney General's Office, Carson City, NV, for Nevada, State of, defendant.

Paul Taggart, Nevada Attorney General's Office, Carson City, NV, for Turnipseed, R. Michael, defendant.

### ORDER

HUNT, District Judge.

Before the Court are two motions: the State of Nevada's **Motion to Dismiss** (# 2, filed March 27, 2000), brought through the Nevada Agency for Nuclear Projects, and all Defendants' **Motion to Dismiss** (# 3, filed March 27, 2000). The United States' Opposition to State's Motions to Dismiss (# 7) was filed May 12, 2000. The Nevada Agency for Nuclear Project's Reply (# 12) was filed May 26, 2000. All Defendants' Reply (# 13) was also filed May 26, 2000. The United States has moved to strike the Motion to Dismiss brought by the Nevada Agency for Nuclear Projects. That motion will be addressed in another order.

### BACKGROUND

This suit arises out of the denial of five applications for appropriation of water.

In July 1997, the Department of Energy (DOE) filed applications, with the State of Nevada, numbered 63263–63267. The purported purpose was to fulfill it obligations under the Nuclear Waste Policy Act (NWPA) (42 U.S.C. § 10101 et seq.) regarding the consideration of a proposed high-level nuclear waste storage facility at Yucca Mountain in Nye County, Nevada.

The United States previously obtained permits for the appropriation of water for

this project, but those permits, according to the United States' opposition, do not expire until April 2002, although several of the permits may expire in December 2000. The United States asserts that it wanted to get an early start on the appropriation renewals to avoid future difficulties or delays.

Several entities protested the applications, including the Nevada Agency for Nuclear Projects. In fact, motions to dismiss the applications by the Nevada Agency were denied. Hearings were conducted by the State Engineer on November 8, 9, 10, 15 and 16, 1999. Evidence was presented primarily by the United States and the Nevada Agency for Nuclear Projects. On February 2, 2000, the State Engineer issued his Ruling No. 4848, denying the applications citing threatened adverse economic interests and public concern.

The State Engineer found, in support of his Ruling, that, although the stated intended use of the water, under its applications, was for the continued site characterization and related construction activities, in its closing arguments the DOE admitted that it filed the applications to construct and eventually operate a high-level nuclear waste facility. Accordingly, the State Engineer found that the filing was for more than just construction. Rather, its intended use was to provide for receiving, transferring and processing of high level nuclear waste.

In reaching his decision, the State Engineer made factual findings that the applications were not in Nevada's best economic interest and that Nevada Revised Statutes (NRS) 533.370(3) [1] prohibited him from approving the applications with that finding. In reaching that conclusion, or in making that finding, the State Engineer found that the State Legislature is presumed to reflect the voice of the people, and had, in enacting NRS. 459.910,[2] determined that the storage of high-level nuclear waste in Nevada was not in the public interest and that the DOE's admitted purpose threatened to prove detrimental to that public interest. Accordingly, it is not the constitutionality of the statute which is in question, it is whether it was appropriate for the State Engineer to draw that conclusion. Or, did he exceed his discretion and authority by doing so.

NRS Chapter 533 deals with the Adjudication of Water Rights in Nevada. NRS 533.450(1) requires that anyone aggrieved by any order or decision of the State Engineer shall seek judicial review, "which shall be initiated in the proper court of the county in which the matters affected or a portion thereof are situated...." Such a court would be the State District Court situation in Nye County. NRS 533.450(3) requires a party to seek judicial review within thirty (30) days of service of the State Engineer's decision.

The United States filed this action on March 2, 2000, and filed an action for judicial review in the State District Court situated in Nye County on March 3, 2000, both within the 30–day limitation.

The complaint in this action seeks a determination declaring that NRS 459.910, as applied, stands as an obstacle to the Congressional mandate in the NWPA. It also seeks a declaration that NRS 459.910, as applied, conflicts with section 116(b) [3] of the NWPA and thus violates the Supremacy Clause of the United States Constitution. The complaint asks this Court to

---

1. NRS 533.370(3) says, in pertinent part, that "where its proposed use ... threatens to prove detrimental to the public interest, the state engineer shall reject the application and refuse to issue the requested permit."

2. NRS 459.910 provides, in pertinent part, that "It is unlawful for any person or governmental entity to store high-level radioactive waste in Nevada."

3. Section 116(b) of the NWPA is 42 U.S.C. § 10136(b). It provides, in part, that after the Secretary notifies the Governor or state legislature that the Secretary has identified a potentially acceptable site for a high-level nuclear waste repository, the Governor or legislature has 60 days in which to submit to Congress a notice of disapproval.

declare that State Engineer ruling No. 4848 is arbitrary, capricious, and an abuse of discretion. It further asks this Court to set the Ruling aside and order the State Engineer to issue the permits. Finally, it asks that the Defendants be enjoined from interfering with the DOE's performance of its obligations under the NWPA.

The motions to dismiss are, in general, based upon the following arguments: (1) the United States has failed to adequately invoke subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345; (2) the U.S. has failed to state a claim as required by Rule 12(b)(6), Fed.R.Civ.P.; (3) this Court lacks jurisdiction because the U.S. is required to litigate the State's appropriation of water pursuant to State law, which requires that relief be sought in State courts; (4) that several of the various doctrines of abstention apply here and this Court should abstain from exercising jurisdiction, even if it has it, and should defer to State law and procedures; and, (5) that NRS 459.910 presents no constitutional obstacle to the carrying out of the DOE's obligations under the NWPA.

This Court finds that even if jurisdiction exists, it is concurrent jurisdiction, and the declared and demonstrated intent of Congress, as reflected in various Supreme Court Decisions, dictate that this Court should abstain from or defer its authority to act to the State Court.

### DISCUSSION

### I. Jurisdiction Pursuant to Section 1331.

Title 28 U.S.C. § 1331 provides that, "The district courts shall have original jurisdiction of all civil actions **arising under** the Constitution, laws or treaties of the United States." (Emphasis added).

 This Court is not convinced that this action "arises under" federal law or the Constitution. To be sure, federal law is impacted by the action of the State Engineer, and the federal government has an interest in the proceedings. However, it would appear that this action really "arises under" Nevada water law and procedures, and this action is nothing more

than a request for judicial review of the State Engineer's Ruling 4848. To paraphrase an anecdote attributed to Abraham Lincoln, just because you call the tail on a dog a leg, doesn't make it a leg. To invoke the "arising under" phrase, the assertion of a federal right must be a substantial part and essential element of the claim. *Gully v. First National Bank in Meridian*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). The Supremacy Clause of the Constitution is not an essential element of the relief the U.S. seeks.

The Plaintiff objects to NRS 549.910 and its invocation by the State Engineer. It claims that it is this Court's obligation to declare that NRS 459.910 is unconstitutional as applied, and that it violates the Supremacy Clause because it was invoked to thwart the government's applications. Reference to the State Engineer's Ruling 4848 demonstrates that that is not the case. The State Engineer did not find that NRS 459.910 prohibited the requested use of the water. Rather, he found that it was factual evidence of the expression of the public interest as determined by legislative action. In fact, at the hearing before the State Engineer, rejected the protestants' arguments that NRS 459.910 prohibits the use of the water, citing *State v. Watkins*, 914 F.2d 1545 (9th Cir.1990). Accordingly, it is not the constitutionality of the law as applied, it is the viability of the conclusions drawn from the passage of the statute (not the statute itself) that is at issue here.

*State v. Watkins* arose when Nevada attempted to block the continuation of the site studies at Yucca Mountain based upon NRS 459.910. The central issue was Congress's authority to regulate public land. In fact, the issue of appropriation of water arose only because the State took the position that since NRS 459.910 prohibited the use of the land for the purposes designated, the applications for water were moot. Accordingly, it refused to follow its own procedures to consider the water applications. *Watkins* presented a prime

opportunity for the Ninth Circuit Court of Appeals to declare NRS 459.910 unconstitutional, but it did not do so. Rather, it ruled that the State's consent was not required when Congress acts pursuant to its plenary authority to regulate public lands (*Id.* at 1554, 1560). The *Watkins* decision required Nevada to follow the established **State** procedures by processing the water appropriation applications submitted by the United States. It did not find they were preempted. This was acknowledged by the United States' pursuit of applications through the State legal and administrative procedures, and the receiving of the permits which now exist for water appropriation

The *Watkins* decision addressed public lands and did not directly address water appropriation rights and procedures, although it had an effect on them. That effect was to cause Nevada to permit, and the U.S. to pursue, appropriation according to Nevada law and procedure.

The point of the foregoing is to demonstrate that this action does not arise under the laws of the United States. It arises out of State water law, to which Congress has historically deferred. The Plaintiff's argument apparently is that "affecting" federal projects is tantamount to "arising under" the laws and Constitution of the United States.

■ "A federal question is jurisdictionally insubstantial if it is patently without merit, or so insubstantial, improbable, or foreclosed by Supreme Court precedent as not to involve a federal controversy". *Demarest v. United States*, 718 F.2d 964, 966 (9th Cir.1983).

## II. Jurisdiction Pursuant to Section 1345.

Title 28 U.S.C. § 1345 provides that, "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

By virtue of the fact that the U.S. is, indeed, the Plaintiff herein this section grants this Court jurisdiction. However, as discussed below, nothing in this section mandates exclusive jurisdiction or precludes concurrent jurisdiction. As is discussed below, while this Court acknowledges it has jurisdiction, it finds that the State of Nevada has concurrent jurisdiction and that historical precedent strongly suggests it defer to the State Court.

## III. Failure to State a Claim Upon Which Relief Can be Granted.

The Defendants argue that this is really an appeal from a state administrative decision, however it may be characterized. For the reasons discussed below, the Federal Courts should defer to State Courts, laws and procedures on the issue of appropriation of nonnavigable waters. However, that does not constitute a failure to state a claim upon which relief can be granted. If the State refused to provide judicial review, this Court could provide it based upon the complaint on file, which specifically asks this Court to declare that State Engineer ruling No. 4848 is arbitrary, capricious, and an abuse of discretion.

The claim does appear to be accurate that the State Engineer's Ruling 4848 was based upon significant factual findings that mandated his decision. In his decision, he noted that in its applications, the DOE stated its intended use of the water was for construction facilities for the site characterization at the Yucca Mountain facility, not for the construction and operation of the facility itself. However, during its closing argument, the DOE admitted that it filed the applications to construct and eventually operate the nuclear waste facility. This, of course, is beyond the Congressional mandate of the NWPA. Congress has not yet authorized the construction and operation of a nuclear waste facility at Yucca Mountain. The Congressional statute still only authorizes construction activities associated with the site

characterization and study. Accordingly, the State Engineer found that the applications were for more than just construction, but for use in the receiving, transfer and processing of high-level nuclear waste. He then made factual findings that the intended use was not in Nevada's best economic interest and that NRS 533.370 prohibited his from approving the applications with that finding. The viability and use of NRS 533.370 is not an issue raised by the U.S.

Accordingly, this case is really an appeal for judicial review of the administrative decision. However, this Court is not prepared to say it could not grant the relief, if the State Court refused to grant judicial review. That situation is not before me.

## IV. Abstention and Deference

The argument, that this Court lacks jurisdiction because the parties are required to litigate this matter in the State Court, is really subsumed in the issue of abstention or deference. I use the alternative description because the Supreme Court, in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), held that none of the abstention doctrines applied, but it nonetheless deferred (by abstaining) to State Court jurisdiction.

Defendants argue that both Congress and the Courts have historically required even the United States to defer to states' water law, procedures and courts, when dealing with applications for appropriation of water. The *Colorado River Water* case is a seminal case on this issue and provides one of the most thorough review and analysis of legal history on the subject. The legislative history of this issue is discussed at length in another significant case, *California v. United States*, 438 U.S. 645, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1978).

In the *California* case, the Supreme Court noted that modern irrigation began with the first band of Mormon pioneers who, in July 1847, built a small dam across City Creek, near the present site of the Salt Lake Temple, and diverted the water to irrigate and plant some five acres of potatoes. *Id.* 648–649, 98 S.Ct. 2985. The Court then noted the differences between the climate and topography of the "Great American Desert" and those of the Pacific Coast States. *Id.* at 649, 98 S.Ct. 2985. It followed with the following excerpts:

The history of the relationship between the Federal Government and the States in the reclamation of the arid lands of the Western States is both long and involved, but through it runs the consistent thread of purposeful and continued deference to state water law by Congress. *** Even in this early stage of development of Western water law, before many of the Western States had been admitted to the Union, Congress deferred to the growing local law. *Id.* at 654, [98 S.Ct. 2985].

*** In 1903, for example, one leading expert on reclamation and water law observed that "[i]t has heretofore been assumed that the authority of each State in the disposal of the water-supply within its borders was unquestioned and supreme, and two of the States have constitutional provisions asserting absolute ownership of all water-supplies within their bounds." E. Mead, Irrigation Institutions 373 (1903).[4] *Id.*

*** And in 1866, Congress for the first time expressly opened the mineral lands of the public domain to exploration and occupation by miners. Mining Act of 1866, ch 262, 14 Stat. 251. Because of the fear that these Acts might in some way interfere with the water rights and systems that had grown up under state and local law, congress explicitly recognized and acknowledged the local law[.] *Id.* at 656, [98 S.Ct. 2985].

Four years later, in the Act of July 9, 1870, 16 Stat. 218, Congress reaffirmed

---

4. Elwood Mean is the Commissioner of Reclamation for whom Lake Mead, created by Hoo-

ver Dam near Las Vegas, Nevada, is named.

that occupants of federal public land would be bound by state water law. *Id.* FN11.

This Court has ... construe[d] the 1877 Desert Land Act before [and] explained that through this language, congress effected a severance of all waters upon the public domain, not therefore appropriated, from the land itself. (Citation omitted.) The nonnavigable waters thereby severed were "reserved for the use of the public under the laws of the states and territories." *Id.* at 657–658, [98 S.Ct. 2985].

*** The [Reclamation Act] clearly provided that state water law would control in the appropriation and later distribution of the water. *Id.* at 664, [98 S.Ct. 2985].

A principal motivating factor behind Congress' decision to defer to state law was thus the legal confusion that would arise if federal water law and state water law reigned side by side in the same locality. Congress also intended to "follo[w] the well-established precedent in national legislation of recognizing local and State laws relative to the appropriation and distribution of water." ...

"Every act since that of April 26, 1966, has recognized local laws and customs appertaining to the appropriation and distribution of water used in irrigation, and it has been deemed wise to continue our policy in this regard." (Citation omitted). *Id.* at 668–669, [98 S.Ct. 2985].

"Since it is clear that the states have the control of water within their boundaries, it is essential that each and every owner along a given water course, including the United States, must be amenable to the law of the State, if there is to be proper administration of water law as it has developed over the years". *Id.* at 678–679, [98 S.Ct. 2985], quoting the Senate Report on the McCarran Amendment, 43 U.S.C. § 666(a).

"Where Congress has expressly addressed the question of whether federal entities must abide by state water law, it has almost invariably deferred to the state law." *United States v. New Mexico*, 438 U.S. 696, 701, 98 S.Ct. 3012, 57 L.Ed.2d 1052 (1978).

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the United States brought suit, in its own behalf and on behalf of two Indian tribes, seeking a declaration of water rights to certain rivers and their tributaries in Colorado. Much of the discussion dealt with whether the United States should even be a party to this litigation. We will address that only as it is relevant to the issues here.

The District Court for the District of Colorado dismissed the case based upon the doctrine of abstention. The Tenth Circuit Court of Appeals reversed the District Court and the Supreme Court reversed the Court of Appeals. In doing so, the Supreme Court held that although the case did not fit within the parameters of the various abstention doctrines, it was still appropriate to dismiss the action and defer to the state courts.

Before embarking on a discussion of the *Colorado River Water* case, this Court identifies some factors which it finds significant in this case. First, it is significant that Nevada has an established administrative and judicial process for water rights applications which are established by statute. The U.S. accepted the administrative procedures of the State of Nevada by initiating the applications to the Nevada State Engineer in the first instance. If, as the U.S. now suggests, Nevada is preempted by the Supremacy Clause from forbidding the U.S. the water rights it seeks, why make such applications? Why not just appropriate it? But the United States did invoke Nevada law and procedures in this instance, and well as when it sought to appropriate water prior to *State of Nevada v. Watkins, supra.* Second, when the applications were challenged, the U.S. acknowledged and participated in the administrative hearings before the State Engineer. Finally, upon

receiving an adverse ruling from the State Engineer, it filed an action seeking judicial review in the State Court in Nye County, the location of the requested appropriation source. This court notes that the Nye County District Court is situated within the county where the applications seek to establish water rights and that this Court is more than 200 miles away. This Court also notes, but is not persuaded by, the fact that the U.S. filed this action the day before it filed in State Court. This Court perceives that as merely a tactical action which does not diminish the consistency with which the United States has, in this matter, adhered to Nevada administrative procedure. Upon receiving an adverse ruling, it appears that the U.S. seeks to find what it perceives as a more sympathetic forum to seek redress. However, it has chosen it course. It is the correct course, and it should be compelled to continue to follow it. That course is capable of reaching and resolving, if necessary, Constitutional issues now raised in an attempt to change jurisdictional horses midstream.

In *Colorado River Water*, Justice Brennan began the opinion of the Court by noting that, "The McCarran Amendment, 66 stat. 560, 43 U.S.C. § 666, provides that 'consent is hereby given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system **or other source,** or (2) for the administration of such rights, where it appears that the United States ... is in the process of acquiring water rights by appropriation **under State law** ....'" *Id.* at 802–03, 96 S.Ct. 1236 (Emphasis added). Then, at the end of that paragraph, in Footnote 1, he says, in pertinent part, "The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances...."

Justice Brennan continues by writing, "It is probable that no problem of the Southwest section of the Nation is more critical than that of scarcity of water. *** [S]everal Southwestern States have established elaborate procedures for allocation of water and adjudication of conflicting claims to that resource." *Id.* at 804, 96 S.Ct. 1236.

The Justice then turns his attention to the question of district-court jurisdiction, finding that the McCarran Amendment does not repeal jurisdiction under § 1345, rather its effect is to "give consent to jurisdiction in the state courts concurrent with jurisdiction in the federal courts over controversies involving federal rights to the use of water...."

The decision continues with a finding that, although the issue there related to federal reserved rights of Indians, "We conclude that the state court had jurisdiction over Indian water rights under the Amendment." *Id.* at 805, 96 S.Ct. 1236. Then, in further rejecting the government's claim that such rights could not be adequate protected in state courts, Justice Brennan quotes from the Senate report on the Amendment, which I quote in part, as follows:

*** It is apparent that if any water user claiming to hold such right by reason of the ownership thereof by the United States or any of its departments is permitted to claim immunity from suit in, or orders of, a State court, such claims could materially interfere with the lawful and equitable use of water for beneficial use by the other water users who are amenable to and bound by the decrees and orders of the State courts." S.Rep. No. 755, Supra, at 4–5.

Justice Brennan later notes as follows:

Moreover, the Government's argument rests on the incorrect assumption that consent to state jurisdiction for the purpose of determining water rights imper-

ils those rights or in some way breaches the special obligation of the Federal Government to protect Indians. Mere subjection of Indian rights to legal challenge in state court, however, would no more imperil those rights than would a suit brought the Government in district court for their declaration.... [I]ndian interests may be satisfactorily protected under regimes of state law."

*Id.* at 812, 96 S.Ct. 1236.

The *Colorado River Water* Court then discussed the various abstention doctrines and found they did not apply to that case, but determined that dismissal was still appropriate. It is unclear whether this case establishes a new abstention doctrine, or an alternative to abstention to accomplish the same end. Regardless of its characterization, the fact that dismissal was considered an appropriate remedy, and the reasons given for sustaining the District Court's dismissal of the action apply here, I quote excerpts at length:

> Although this case falls within none of the abstention categories, there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions.... These principles rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' (Citations omitted). Generally, ... 'the pendency of an action in the state court is no bar to proceedings.... [H]owever, though no precise rule has evolved, the general principle is to avoid duplicative litigation. (Citations omitted). This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them. (Citations omitted). Given this obligation and the absence of weightier considerations of constitutional adjudication and state-federal re-

lations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited that the circumstances appropriate for abstention. The former circumstances, though exceptional, do nevertheless exist.

. . . . .

> It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts. (Citations omitted). This has been true even where the Government was a claimant in existing state proceedings and then sought to invoke district-court jurisdiction under the jurisdictional provisions antecedent to 28 U.S.C. § 1345. (Citations omitted). [A] federal court may also consider such factors as the inconvenience of the federal forum (Citations omitted); the desirability of avoiding piecemeal litigation (Citations omitted); and the order in which jurisdiction was obtained by the concurrent forums (Citations omitted). No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. *Id.* at 817–819, [96 S.Ct. 1236].

Justice Brennan then invoked the foregoing factors as counseling against concurrent federal proceedings, ending with this reference: "The consent to jurisdiction given by the McCarran Amendment bespeaks a policy that recognizes the availability of comprehensive state systems for adjudication of water rights as the means for achieving these goals.... Additionally, the responsibility of managing the State's waters, to the end that they be allocated in accordance with adjudicated water rights, is given to the State Engineer.... [W]e also find significant (a) the apparent absence of any proceedings in the District Court, other than the filing of the com-

plaint, prior to the motion to dismiss, (b) the extensive involvement of state water rights ... (c) the 300–mile distance between the District Court in Denver and the court in Division 7, and (d) the existing participation by the Government in [other] Division [proceeding]." *Id.* at 819–821, 96 S.Ct. 1236.

In the case at bar, the fact that the U.S. filed this case a day before the one in State Court, does not mean that this Court "assumed" or "exercised" jurisdiction first. Having both State and Federal Courts make determinations of State-controlled water rights would create piecemeal litigation. The State administrative system first acquired control of the water rights when the U.S. filed its applications with them. Pursuing review of administrative decisions through the normal and usual process would avoid piecemeal litigation.

Accordingly, the basis for the *Colorado River Water* decision applies equally here.

Furthermore, some of the abstention doctrines extant provide additional justification for this Court to decline exercising its jurisdiction. Although the Supreme Court found they did not apply in the *Colorado River Water* case, that is not true here.

Acknowledging that abstention from the exercise of federal jurisdiction is the exception, not the rule, and that it is an extraordinary and narrow exception at that, *Id.* at 813, 96 S.Ct. 1236, and recognizing further that it is not appropriate to dismiss a suit merely because a State court could also entertain it, *Alabama Publ. Serv. Comm'n v. Southern R. Co.,* 341 U.S. 341, 361, 71 S.Ct. 762, 95 L.Ed. 1002 (1951), "Abstention is appropriate 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.' " *Colorado River Water,* 424 U.S. at 814, 96 S.Ct. 1236. citing *Railroad Comm'n of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In *Colorado River Water* the Court found it did not apply because it presented no federal constitutional

issue for decision. However, here the U.S. claims there is a constitutional issue. It cannot have it both ways. If there is, it qualifies for a *Pullman* abstention. If not, there is no issue justifying bringing it to this Court is the first place.

The *Burford* abstention doctrine was pronounced in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). This case stands for the proposition that abstention is appropriate where there is presented difficult questions of state law bearing on policy problems of substantial public importance which are, themselves, more important than the result in the case at bar. It applies where it appears that the exercise of federal judicial review would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. The appropriation of water has historically been a matter of substantial public concern for states like Nevada situated in the arid Southwest. No one can question that the issue of whether a high-level nuclear waste repository is one of substantial public concern. The Court in *Burford* held that, where the State had established its own administrative review system for dealing with (in that case) oil and gas fields, federal review would be impermissibly disruptive on state policy for the management of those fields. It should also be noted that in *Burford,* there were raised colorable constitutional claims and was brought on the basis of the existence of a federal question. While the opportunity to avoid having to resolve a federal question is not, alone, justification for abstention, when considered with the other factors mention, it becomes an important consideration.

It is this Court's opinion that this matter qualifies for abstention under the *Burford* doctrine, as well.

The *Younger* abstention doctrine (*Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)) dealt with attempts to restrain State criminal actions. Though there have been attempts to expand the

effect of that decision, there is no need to attempt to do so here. Accordingly, this Court finds that the *Younger* abstention doctrine is not applicable here.

However, it is the opinion of this Court that pursuant to the analysis of the *Colorado River Water, Burford* and *Pullman,* this case would qualify for dismissal under each and all of those doctrines. This matter clearly belongs in the administrative and Court system of the State of Nevada, specifically that of Nye County, where these applications would take effect. This process began there. The Ninth Circuit has indicated that the State must effectuate is administrative and legal procedures. This process has been pursued by the U.S. in the State process. The appropriate State Court stands ready to provide judicial review. The United States, if it finds the relief less than legally satisfactory, has the right to appeal through appropriate steps to the United States Supreme Court. The issues here can and should be pursued in State Court.

Accordingly, for the reasons stated above, it is HEREBY ORDERED that State of Nevada's Motion to Dismiss (# 2) and Defendants' Motion to Dismiss (# 3) are GRANTED.