UNITED STATES of America,
Plaintiff–Appellant,

v.

Peter MORROS, Defendant,

and

State of Nevada; R. Michael Turnip-seed; Nevada Agency for Nuclear Projects, Defendants–Appellees.

No. 00–17330.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 2001

Filed Oct. 15, 2001

John Cruden, Acting Assistant Attorney General; Stephen A. Bartell, David C. Shilton, and Jared A. Goldstein, Attorneys, Department of Justice, for plaintiff-appellant United States.

Frankie Sue Del Papa, Attorney General; Paul G. Taggart, Deputy Attorney General, for defendants-appellees Director of Nevada Department of Conservation Resources and the Nevada State Engineer.

Frankie Sue Del Papa, Attorney General; Marta A. Adams, Senior Deputy Attorney General, for defendant-appellee Nevada Agency for Nuclear Projects.

Before: HUG, Jr. and T.G. NELSON, Circuit Judges, and SHADUR,* District Judge.

Opinion by Judge T.G. NELSON; Dissent by Judge HUG

**T.G. NELSON, Circuit Judge:**

The United States appeals the district court's decision to abstain from deciding whether the Nevada State Engineer's denial of the United States' water permit applications is preempted by federal law.

We hold that abstention was improper and remand for adjudication on the merits.

## I

## FACTS AND DISTRICT COURT PROCEEDINGS

Congress passed the Nuclear Waste Policy Act ("NWPA" or "the Act")[1] in 1982 in order to "establish a schedule for the siting, construction, and operation"[2] of a national nuclear waste repository. Although the Act originally contemplated that the Secretary of Energy would recommend to the President three potential sites for site characterization,[3] Congress amended it in 1987 to designate Yucca Mountain, Nevada, as the sole site characterization location.[4] Since that time, substantial amounts of money and effort have been expended to evaluate Yucca Mountain's suitability and to prepare it for use as a repository in the event that the President and Congress ultimately designate it for that purpose.

The Yucca Mountain site characterization activities require water. Realizing that the current water permits expire in April 2002 and that obtaining new permits would take time, the Department of Energy ("DOE") filed five permit applications with Nevada's State Engineer in 1997.

---

* Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois.

1. 42 U.S.C. §§ 10101–10270 (1997).

2. *Id.* at § 10131(b)(1).

3. *Id.* at § 10132(b)(1)(A). The NWPA defines "site characterization" to include:
 activities, whether in the laboratory or in the field, undertaken to establish the geologic condition and the ranges of the parameters of a candidate site relevant to the location of a repository, including borings, surface excavations, excavations of exploratory shafts, limited subsurface lateral excavations and borings, and in situ testing needed to evaluate the suitability of a candidate site for the location of a repository, but not including preliminary borings and geophysical testing to assess whether site characterization should be undertaken.
 42 U.S.C. § 10101(21)(b); 10 C.F.R. § 60.2.

4. *Nuclear Waste Policy Act Amendments of 1987,* Pub.L. No. 100–203, Title V, § 5011(g)(3) (1987) (codified at 42 U.S.C. § 10133(c)(3)(A)-(F)).

These five applications, which differ only in their points of diversion, attest that DOE's uses of the water will include, but are not limited to, road construction, facility construction, drilling, dust suppression, tunnel and pad construction, testing, culinary, domestic and other related site uses.

Several parties protested the DOE's permit applications. In November 1999, the State Engineer conducted an administrative hearing to consider these protests. At that hearing, a DOE witness testified that, if Congress ultimately designated Yucca Mountain as a nuclear waste repository, the requested water would be used to construct and operate such a facility in addition to the purposes listed on the applications.

The EPA witness's testimony featured prominently in the State Engineer's decision to deny the DOE's permit applications. Nevada law allows the State Engineer to deny a permit application for only three reasons: (1) there is no unappropriated water at the proposed source; (2) the proposed use conflicts with existing rights; or (3) the proposed use threatens to prove detrimental to the public interest.[5] Because the parties stipulated that sufficient water was available and no one claimed to have conflicting rights, the State Engineer focused his inquiry on the third reason, the

potential threat to the public interest.[6] Citing the EPA witness's testimony, the State Engineer concluded that the requested water was not for site characterization.[7] Rather, he explained, "[t]he applicant is requesting the use of water for actual use in the receiving, transfer, and processes for the storage of high-level nuclear waste in Nevada."[8]

This determination greatly simplified the State Engineer's task. The purposes the State Engineer ascribed to the DOE's permit applications directly conflicted with Nevada law. The State Engineer noted that, by enacting Nevada Revised Statute 459.910, which makes it "unlawful for any person or governmental entity to store high-level radioactive waste in Nevada,"[9] the Nevada legislature "has already determined that the use applied for . . . threatens to prove detrimental to the public interest."[10] Significantly, the State Engineer expressly disavowed any obligation to conduct his own public interest assessment.[11] He denied the DOE's applications, stating that "since NRS § 459.910 prohibits the operation of a high-level nuclear waste repository to be sited in Nevada, the use of water in conjunction with said facility threatens to prove detrimental to the public interest."[12]

---

5. Nev.Rev.Stat. 533.370(3) (1999). In 2001, the Nevada legislature amended the statute, amplifying the second reason in a way that does not affect our analysis here. *See* Nev. Rev.Stat. 533.370(3) (2001).

6. *See In re Applications 63263, 63264, 63265, 63266, and 63267 Filed to Appropriate Public Waters (Ruling 4848)* (Nev. State Engineer, Feb. 2, 2000) (final ruling) (hereinafter *"Ruling 4848"*).

7. The State Engineer recognized that, if the permits sought water for site characterization only, a denial based on the public interest would be squarely preempted by our decision

in *State of Nevada v. Watkins*, 914 F.2d 1545 (9th Cir.1990). *Ruling 4848* at 23.

8. *Ruling 4848* at 18.

9. Nev.Rev.Stat. 459.910(1).

10. *Ruling 4848* at 22.

11. *Id.* "The State Engineer . . . does not have the duty or authority to independently review the decision of the Nevada legislature that high-level waste is not to be stored in Nevada." *Id.*

12. *Id.*

On March 2, 2000, the United States filed a complaint for declaratory and injunctive relief in the United States District Court for the District of Nevada. The complaint alleged that Nevada Revised Statute 459.910, as applied by the State Engineer, stands as an obstacle to the accomplishment of the purposes of the NWPA and is therefore preempted under the Supremacy Clause. The next day, the United States filed a protective notice of appeal from the State Engineer's decision in state court and then moved to stay that action pending resolution of the federal case. At the time of oral argument in this case, the state court had not ruled on the United States' motion and no substantive briefing or other proceedings had occurred in Nevada court.

In September 2000, the federal district court dismissed the United States' complaint.[13] The court held that, the United States' pleadings notwithstanding, the court lacked jurisdiction under 28 U.S.C. § 1331.[14] The court found that it had jurisdiction under 28 U.S.C. § 1345,[15] but opted to abstain based on the *Pullman*,[16] *Burford*,[17] and *Colorado River*[18] doctrines.[19] The United States appeals the district court's abstention-based dismissal.

## II

## FEDERAL QUESTION JURISDICTION

■ In its complaint, the United States sought both declaratory and injunctive relief, including: (1) a declaration that, under the Supremacy Clause, the NWPA preempts Nevada Revised Statute 459.910 and the State Engineer's ruling that relied upon it; (2) an order enjoining the State Engineer to evaluate the United States' permit applications without relying on Section 459.910 and enjoining all defendants from "unlawfully interfering with DOE's performance of its obligations under NWPA;" and (3) a declaration that the State Engineer's ruling was arbitrary and capricious. These pleadings suffice to confer federal question jurisdiction.[20] The district court erred in arriving at the contrary conclusion.

As the Supreme Court explained in *Bell v. Hood*,[21] the plaintiff controls the complaint, and the complaint controls whether a suit "arises under" federal law for the purposes of 28 U.S.C. § 1331.[22] "Where the complaint ... seek[s] recovery directly

---

**13.** *United States v. Nevada*, 123 F.Supp.2d 1209 (D.Nev.2000).

**14.** *Id.* at 1213. Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

**15.** *Nevada*, 123 F.Supp.2d at 1213. Section 1345 provides that "[e]xcept as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." 28 U.S.C. § 1345.

**16.** *Railroad Comm'n v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

**17.** *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

**18.** *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

**19.** *Nevada*, 123 F.Supp.2d at 1218–19.

**20.** 28 U.S.C. § 1331.

**21.** 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

**22.** *Id.* at 680, 66 S.Ct. 773 (internal quotation marks, alteration indications, and citation omitted).

under the Constitution or laws of the United States, the federal court ... must entertain the suit." [23]

More recently, the Supreme Court explained that

the district court has jurisdiction if the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another, unless the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.[24]

The United States plainly sought "recovery directly under the Constitution or the laws of the United States." [25] The gravamen of its complaint was that the State Engineer's ruling contravened the NWPA and thus violated the Supremacy Clause.

If the NWPA is interpreted to contemplate, either explicitly or implicitly, that only the Federal Government shall be entitled to determine whether siting a nuclear waste repository at Yucca Mountain is in the public interest, then the United States will prevail. If NWPA is not so interpreted, or if it is interpreted to allow state participation over and above the "notice of disapproval process" explicitly provided for in 42 U.S.C. § 10136,[26] then the United States will lose.

Despite the fact that interpretation of the NWPA will control the outcome of this suit, the district court was not convinced that the United States' action arose under federal law. At defendants' urging, the court held that the Supremacy Clause was not an essential element of the relief the United States seeks. The court arrived at this conclusion by delving into the merits of the action, and, in particular, into the substance of the State Engineer's decision. It held that the United States' constitutional claim that the NWPA preempts Nevada Revised Statute 459.910 was improvidently asserted because the State Engineer's denial of the Government's permit applications was not predicated on a straightforward application of Nevada's state law. According to the court, the State Engineer "did not find that NRS

23. *Id.* at 681–82, 66 S.Ct. 773.

24. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (internal quotation marks and citations omitted).

25. *Bell*, 327 U.S. at 681–82, 66 S.Ct. 773.

26. 42 U.S.C. § 10136(b) provides as follows:
(b) State participation in repository siting decisions
(1) Unless otherwise provided by State law, the Governor or legislature of each State shall have authority to submit a notice of disapproval to the Congress under paragraph (2). In any case in which State law provides for submission of any such notice of disapproval by any other person or entity, any reference in this part to the Governor or legislature of such State shall be considered to refer instead to such other person or entity.

(2) Upon the submission by the President to the Congress of a recommendation of a site for a repository, the Governor or legislature of the State in which such site is located may disapprove the site designation and submit to the Congress a notice of disapproval. Such Governor or legislature may submit such a notice of disapproval to the Congress not later than the 60 days after the date that the President recommends such site to the Congress under section 10134 of this title. A notice of disapproval shall be considered to be submitted to the Congress on the date of the transmittal of such notice of disapproval to the Speaker of the House and the President pro tempore of the Senate. Such notice of disapproval shall be accompanied by a statement of reasons explaining why such Governor or legislature disapproved the recommended repository site involved.

459.910 prohibited the requested use of the water. Rather, he found that [the state statute] was factual evidence of the expression of the public interest as determined by legislative action."[27] "Based on this determination, the court held that the viability of the conclusions drawn from the passage of the statute, rather than the constitutionality of the statute itself, was what was really at issue.[28] This, in turn, led to the court's conclusion that, because the United States' action was "nothing more than a request for judicial review of the State Engineer's Ruling 4848," it "really 'arises under' Nevada water law and procedures."[29] In essence, the court held that whether the NWPA preempted Nevada Revised Statute 459.910 was immaterial because the State Engineer's decision was not based on Nevada Revised Statute 459.910 in any constitutionally significant way.

In *Ultramar America Ltd. v. Dwelle,*[30] we held that "[w]hether the complaint states a claim 'arising under' federal law must 'be ascertained by the legal construction of [the plaintiff's] allegations, and not by the effect attributed to those allegations by the adverse party.'"[31] Here, the district court erred in allowing defendants to repackage the plaintiffs' complaint to fit their interpretation of the evidence. It is the plaintiffs' prerogative "to make violation of [a] ... Constitutional provision[ ] the basis of the suit."[32]

The United States' decision to challenge Nevada Revised Statute 459.910 as preempted leaves the court with only two options: (1) exercise jurisdiction; or (2) dismiss the suit because the federal claim is insubstantial.[33] "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'"[34] The United States' federal preemption claim is none of the above.

The State Engineer candidly admitted that he was "not required by statute to conduct the political and economic decisionmaking as to whether a repository should be located in Nevada"[35] because the Nevada's legislature had announced, through Nevada Revised Statute 459.910, that construction and operation of a nuclear waste repository would be detrimental to the state's public interest, and he had neither "the duty [n]or authority to independently review that decision."[36] Given this express invocation of the state statute and the State Engineer's disavowal of any independent inquiry, the United States' assertion that the State Engineer employed Nevada Revised Statute 459.910 to thwart federal objectives cannot be described as "insubstantial," "implausible," or "completely devoid of merit."

The United States' claim that the NWPA preempts Nevada Revised Statute

---

**27.** 123 F.Supp.2d at 1212.

**28.** *Id.*

**29.** *Id.*

**30.** 900 F.2d 1412 (9th Cir.1990).

**31.** *Id.* at 1414 (quoting *Tennessee v. Union & Planters' Bank,* 152 U.S. 454, 460, 14 S.Ct. 654, 38 L.Ed. 511 (1894)).

**32.** *Bell,* 327 U.S. at 681, 66 S.Ct. 773.

**33.** *See id.* at 682–83, 66 S.Ct. 773.

**34.** *Steel Co.,* 523 U.S. at 89, 118 S.Ct. 1003 (quoting *Oneida Indian Nation of N.Y. v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974)).

**35.** *Ruling 4848* at 22.

**36.** *Id.*

459.910 cannot be characterized as insubstantial either. The NWPA's purpose was to establish "the Federal responsibility[ ] and definite Federal policy" for the disposal of radioactive waste and to "define the relationship between the Federal Government and the State governments" with respect to this problem.[37] These purposes lend strength and plausibility to the United States' assertion that Nevada's law is preempted, particularly when coupled with 42 U.S.C. § 10136. As noted above, § 10136 prescribes a very limited mode of state participation not including preemptive legislative vetoes like the one at issue here.

Our decision in *State of Nevada v. Watkins*[38] further confirms the substantiality of the Government's preemption claim. In *Watkins*, we held that because "Congress clearly directed the [DOE] to continue site characterization activities at Yucca Mountain in the 1987 amendments to the NWPA,"[39] "Nevada's attempted legislative veto of the Secretary's site characterization activities [was] preempted by the NWPA."[40] We held that Nevada Revised Statute 459.910 "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress."[41]

Although the President and Congress have not designated Yucca Mountain as a nuclear waste repository, Nevada's invocation of Nevada Revised Statute 459.910 to deny the United States' permit applications may still "stand as an obstacle" to the Act's accomplishment for two reasons.

First, Congress may have preempted the field of nuclear waste disposal. The Supreme Court has not yet decided this issue,[42] but, as we noted in *Watkins*, the NWPA clearly says that there will be a national nuclear waste repository and that the site of this repository will be recommended by the President and approved by Congress.[43] Second, even if Congress has not occupied the field of nuclear waste disposal, "state law is still pre-empted to the extent it actually conflicts with federal law."[44] Nevada Revised Statute 459.910 may "conflict" with federal law by purporting to make a decision on a state level that the NWPA contemplates will be made by the national government. The fact that the NWPA contemplates state participation through the notice of disapproval strengthens this argument.[45] Thus, we hold that the United States' preemption argument is substantial and that 28 U.S.C. § 1331 therefore supplies jurisdiction in this case.

In addition to jurisdiction pursuant to 28 U.S.C. § 1331, the federal court has jurisdiction to hear this case under 28 U.S.C. § 1345. That statute provides the district courts with original jurisdiction of all civil actions commenced by the United States. The Nevada district court recognized that the statute granted it jurisdiction by virtue of the fact that the United States was the plaintiff in the case. Therefore, regardless of the outcome of federal question jurisdiction, the district court has independent

---

**37.** 42 U.S.C. § 10131(b)(2) and (3).

**38.** 914 F.2d 1545 (9th Cir.1990).

**39.** *Id.* at 1561.

**40.** *Id.*

**41.** *Id.* (internal quotation marks and citation omitted).

**42.** *Id.*

**43.** *Id.* (citing 42 U.S.C. §§ 10134, 10136(b)(2)).

**44.** *Id.* at 1560 (internal quotation marks and citation omitted).

**45.** *See* 42 U.S.C. § 10136.

subject matter jurisdiction under 28 U.S.C. § 1345.

## III

## ABSTENTION

After concluding that 28 U.S.C. § 1345, but not 28 U.S.C. § 1331, conferred subject matter jurisdiction, the district court abstained from ruling on the merits based on *Pullman, Burford,* and *Colorado River.*[46] The court further held that *Younger*[47] abstention did not apply.[48]

 Because the federal courts' obligation to adjudicate claims within their jurisdiction is "virtually unflagging,"[49] abstention is permissible only in a few "carefully defined"[50] situations with set requirements. We review *de novo* whether the facts of the instant case conform to these requirements.[51] If they do, we review the district court's decision to abstain for an abuse of discretion.[52]

### A. Pullman *Abstention*

 *Pullman* abstention is the oldest of the abstention doctrines and perhaps the easiest to understand. In *Pullman,* railroads and their porters brought an equal protection challenge to a Texas Railroad Commission regulation. The regulation required that all sleeper cars on Texas trains had to be attended by Pullman con-

ductors rather than porters during an era when Pullman conductors were white and porters were black.[53] In the Supreme Court's estimation, this race relations controversy raised more than a substantial constitutional issue.[54] It touched upon "a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open."[55]

In *Pullman,* an alternative to federal adjudication was open: under state law, the Railroad Commission's statutory authority for issuing the controversial regulation was doubtful. In light of this state law vulnerability, the Supreme Court instructed the district court to "restrain [its] authority."[56] It observed that if the Railroad Commission had no authority to promulgate the regulation in the first place, there is no need to decide whether or not it is constitutional.[57]

 Our test to determine whether *Pullman* abstention is warranted in this case closely follows the Supreme Court case. *Pullman* abstention is appropriate only when three concurrent criteria are satisfied: (1) the federal plaintiff's complaint must require resolution of a sensitive question of federal constitutional law; (2) that question must be susceptible to being mooted or narrowed by a definitive ruling on state law issues; and (3) the

---

46. *Nevada,* 123 F.Supp.2d at 1219.

47. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

48. *Nevada,* 123 F.Supp.2d at 1218–19.

49. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans ("NOPSI"),* 491 U.S. 350, 359, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (quoting *Deakins v. Monaghan,* 484 U.S. 193, 203, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988)).

50. *Id.*

51. *Fireman's Fund Ins. Co. v. Quackenbush,* 87 F.3d 290, 294 (9th Cir.1996).

52. *Id.*

53. *Pullman,* 312 U.S. at 497–98, 61 S.Ct. 643.

54. *Id.*

55. *Id.* at 498, 61 S.Ct. 643.

56. *Id.* at 501, 61 S.Ct. 643.

57. *Id.*

possibly determinative state law must be unclear.[58]

None of these criteria is satisfied here. Although the location of a nuclear waste repository is plainly a sensitive social issue, it is not the issue in this case. The issue in this case is whether the NWPA preempts Nevada Revised Statute 459.910. This preemption question is not a sensitive *constitutional* question like the one at issue in *Pullman.* As we explained in *Knudsen Corp. v. Nevada State Dairy Comm'n,*[59] "[a]lthough preemption has its doctrinal base in the Constitution, the question is largely one of determining the compat[i]bility of a state and a federal statutory scheme. No constitutional issues of substance are presented."[60] Because the compatibility of state and federal law is precisely the issue here, *Pullman* abstention is not appropriate.[61]

Even if preemption were deemed to be a sensitive constitutional question, *Pullman* abstention would still be inappropriate because there is no unclear state law issue that would moot the preemption question if resolved by a state court.[62] Unlike the action in *Pullman,* the state action at issue here does not rest on shaky statutory ground. There is no viable claim that the State Engineer's decision is invalid under Nevada law.[63] On the contrary, it is clear that the State Engineer's decision not only comports with Nevada law, but is in fact dictated by it. Moreover, Nevada law makes it abundantly clear that the state does not want a nuclear waste repository on its soil. Far from suffering from a lack of clarity, Nevada law has an overabundance of it. Accordingly, *Pullman* abstention is inappropriate here.

## B. Burford *Abstention*

■ *Burford* abstention also arose from a case involving the Texas Railroad Commission. In *Burford,* an oil company filed suit in federal court to attack the validity of a permit that the Commission had granted to Burford. The permit allowed Burford to drill four wells in an East Texas oilfield.[64] The Supreme Court held that although the federal court had diversity jurisdiction over this "thorny"[65] regulatory controversy, it properly declined to rule on the merits. After a long exegesis on the complexities of Texas oil law, the Court concluded that "[a]s a practical matter, the federal courts can make small contribution to the well organized system of regulation and review which the Texas statutes provide" and that "[d]elay, misunderstanding of local law, and needless federal conflict with the State policy[ ] are the inevitable product of this double system of review."[66]

**58.** *San Remo Hotel v. City and County of San Francisco,* 145 F.3d 1095, 1104 (9th Cir. 1998); *Pearl Inv. Co. v. City and County of San Francisco,* 774 F.2d 1460, 1463 (9th Cir. 1985).

**59.** 676 F.2d 374 (9th Cir.1982).

**60.** *Knudsen,* 676 F.2d at 377.

**61.** *See Hotel Employees and Restaurant Employees Int'l Union v. Nevada Gaming Comm'n,* 984 F.2d 1507, 1512 (1993).

**62.** *See Knudsen,* 676 F.2d at 377 ("A federal court may postpone the exercise of its jurisdiction in cases presenting a federal constitutional issue which might be mooted or pre-sented in a different posture by a state court determination of pertinent state law.") (internal quotation marks and citation omitted).

**63.** Nevada law clearly states that the State Engineer must deny a water permit if the proposed use is against the public interest. Nev.Rev.Stat. § 533.370.

**64.** *Burford,* 319 U.S. at 316–17, 63 S.Ct. 1098.

**65.** *Id.* at 318, 63 S.Ct. 1098.

**66.** *Id.* at 327, 63 S.Ct. 1098.

■ Burford allows courts to "decline to rule on an essentially local issue arising out of a complicated state regulatory scheme." [67] Its application requires

> first, that the state has chosen to concentrate suits challenging the actions of the agency involved in a particular court; second, that federal issues could not be separated easily from complex state law issues with respect to which state courts might have special competence; and third, that federal review might disrupt state efforts to establish a coherent policy.[68]

None of these criteria is met in this case. There is no evidence, as there was in *Burford* with respect to the Texas courts, that "[Nevada] courts are working partners with [the State Engineer] in the business of creating a regulatory system for [the issuance of water permits]." [69] Even if there were such a symbiotic relationship between the state courts and the State Engineer, it would hardly be relevant because this case does not revolve around "complex state law issues," such as who is entitled to how much water. Rather, it revolves around whether state law conflicts with federal law, which is plainly not an issue "with respect to which state courts might have special competence." [70]

This is a preemption case, and, as we stated in *Knudsen*, "*Burford* abstention is particularly inappropriate when the plaintiff's claim is based on preemption, because abstaining under *Burford* would be an implicit ruling on the merits." [71]

### C. Colorado River *Abstention*

■ Although the district court invoked *Pullman* and *Burford* abstention as alternate grounds, it based its decision to abstain primarily on *Colorado River Water Conservation District v. United States*.[72] The facts of *Colorado River*, however, could not be more dissimilar from this case.

In *Colorado River*, the Government filed suit in federal district court against more than a thousand water users to establish its own water rights and those of its trustee tribes in one of Colorado's seven Water Divisions, Division 7.[73] The Government had previously pursued adjudication of non-Indian reserved water rights in Colorado state courts.[74] Cognizant of the previous state adjudications and the McCarran Amendment's [75] expressed preference for state, rather than federal, adjudication of complex water appropriations issues, one enterprising federal defendant joined

---

67. *Knudsen,* 676 F.2d at 376.

68. *Id.* at 377.

69. *Burford,* 319 U.S. at 326, 63 S.Ct. 1098.

70. *Knudsen,* 676 F.2d at 377.

71. *Id.*

72. 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

73. *Id.* at 804–05, 96 S.Ct. 1236. As the Supreme Court explained, Colorado had established "elaborate procedures" for continuously adjudicating water rights claims. Part of its system was to divide the state into seven water districts. *Id.* at 804, 96 S.Ct. 1236.

74. *Id.* at 806, 96 S.Ct. 1236.

75. 43 U.S.C. § 666. The McCarran Amendment provides, in relevant part:

> Consent is hereby given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and

the United States as a party to the state action adjudicating water rights in Division 7 and then proceeded to move the federal district court to dismiss in favor of the state proceedings.[76] The district court granted the motion to dismiss.[77]

On review, the Supreme Court's first order of business was to destroy the notion that, by consenting to state adjudication of the United States' water rights, the McCarran Amendment divested district courts of their jurisdiction over this type of claim.[78] The Court held that the Amendment did nothing to alter the jurisdiction conferred by 28 U.S.C. § 1345.[79] The Court next examined whether any of the traditional abstention doctrines justified the district court's refusal to rule on the merits. After holding that they did not,[80] the Court announced what has become known as the *Colorado River* doctrine:

> Although this case falls within none of the abstention categories, there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions.... These principles rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of the litigation.[81]

In *Colorado River*, the Court's chief concern was with avoiding piecemeal litigation:

> Turning to the present case, a number of factors clearly counsel against concur-

rent federal proceedings. The most important of these is the McCarran Amendment itself. The clear federal policy evinced by that legislation is the avoidance of piecemeal adjudication of water rights in a river system. This policy is akin to that underlying the rule requiring that jurisdiction be yielded to the court first acquiring control of property, for the concern in such instances is with avoiding the generation of additional litigation through permitting inconsistent dispositions of property.... The consent to jurisdiction given by the McCarran Amendment bespeaks a policy that recognizes the availability of comprehensive state systems for adjudication of water rights as the means for achieving these goals.[82]

 The district court concluded that the same concern for avoidance of piecemeal litigation counsels abstaining here. We disagree. *Colorado River* does *not* say that every time it is possible for a state court to obviate the need for federal review by deciding factual issues in a particular way, the federal court should abstain. As the Supreme Court has observed, such a holding would "make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." [83] Rather, *Colorado River* stands for the proposition that when Congress has passed a law expressing a preference for unified state adjudication, courts should respect that preference. As the Third Circuit astutely observed, "it is evident that the avoidance

---

the United States is a necessary party to such suit.
*Id.*

**76.** *Colorado River*, 424 U.S. at 806, 96 S.Ct. 1236.

**77.** *Id.*

**78.** *Id.* at 806–09, 96 S.Ct. 1236.

**79.** *Id.* at 809, 96 S.Ct. 1236.

**80.** *Id.* at 813, 96 S.Ct. 1236.

**81.** *Id.* at 817, 96 S.Ct. 1236 (internal quotation marks and alteration omitted).

**82.** *Id.* at 819, 96 S.Ct. 1236.

**83.** *NOPSI*, 491 U.S. at 368, 109 S.Ct. 2506.

of piecemeal litigation factor is met, as it was in ... *Colorado River* itself, only when there is evidence of a strong federal policy that all claims should be tried in the state courts." [84]

There is no such expressed preference here. This is not a comprehensive stream adjudication case to which the McCarran Amendment applies. The preemption issue that the United States seeks to have federally adjudicated bears scant resemblance to the complex water ownership issues involved in *Colorado River*. In this case, allocation of limited water rights is not an issue because there is an adequate water supply to fulfill the government's request. Moreover, *Colorado River* was a state law case that the Government sought to have federally adjudicated. This case is the converse: a federal law case that the state seeks to have adjudicated in state court. It would be surprising indeed if Congress had passed a law expressing a preference for state adjudication of federal preemption issues. Because Congress has not done so, we hold that *Colorado River* abstention has no applicability here.

## D. Younger *Abstention*

■ *Younger* abstention is the one abstention doctrine the district court did not invoke to justify its decision to abstain in this case. The court reasoned that *Younger* dealt with attempts to restrain state criminal prosecutions and that "[t]hough there have been attempts to expand the effect of that decision, there is no need to attempt to do so here." [85] Accordingly, the court found that *Younger* abstention was inapplicable.

■ We hold that *Younger* is inapplicable here for an even more basic reason.[86] "Whether it is labeled 'comity,' 'federalism,' or some other term," the policy objective behind *Younger* abstention is to "avoid unnecessary conflict between state and federal governments." [87] Like the Third, Fifth, and Eleventh Circuits, we believe this policy lacks force where the United States is a litigant: [88]

[I]n a case in which the United States seeks relief against a state or its agency, the state and federal governments are in

---

84. *Ryan v. Johnson,* 115 F.3d 193, 197–98 (3d Cir.1997) (internal quotation marks omitted).

85. *Nevada,* 123 F.Supp.2d at 1218–19.

86. Because of its criminal context, *Younger* made no mention of possible civil applications. In several subsequent cases, however, the Supreme Court has made it clear that the principles of "Our Federalism" extend to the civil context as well. *See, e.g., Ankenbrandt v. Richards,* 504 U.S. 689, 705, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) (noting that "we have extended *Younger* abstention to the civil context"); *NOPSI,* 491 U.S. at 367–68, 109 S.Ct. 2506 ("[O]ur concern for comity and federalism has led us to expand the protection of *Younger* beyond state criminal prosecutions, to civil enforcement proceedings, and even to civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions ...."); *see also Pennzoil Co. v. Texaco*

*Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). In light of these cases, suggestions that *Younger* is inapplicable because of its original criminal context are no longer valid.

87. *United States v. Composite State Bd. of Med. Examiners,* 656 F.2d 131, 136 (5th Cir. Unit B Sept.1981); *see generally* James C. Rehnquist, "Taking Comity Seriously: How to Neutralize the Abstention Doctrine," 46 Stan. L.Rev. 1049 (1994).

88. *United States v. Dicter,* 198 F.3d 1284, 1291 (11th Cir.1999); *United States v. Commonwealth of Pa.,* 923 F.2d 1071, 1078–79 (3d Cir.1991); *Composite State Bd.,* 656 F.2d at 136.

direct conflict before they arrive at the federal courthouse. By the time the United States brings suit in federal court against a state, any attempt to avoid a federal-state conflict would be futile.[89]

Since it is impossible to avoid federal-state conflict when the United States is a party, the determination of forum depends upon choosing the proper forum for resolution of the conflict.[90] When asserting a superior federal interest against a state, the forum of choice for the federal government is the federal court.[91]

Conflict inheres in situations like that at issue here. Not only is the United States acting as the plaintiff in the case, asserting its rights against those of the state, but the United States and Nevada have been at loggerheads over the potential siting of a nuclear waste repository in that state since at least 1989. In that year, Nevada brought suit against the United States alleging that the 1987 NWPA amendments designating Yucca Mountain as the sole site to be characterized "arose out of a political conspiracy between the Bureau of Land Management, the DOE and Congress designed to isolate Nevada and render it the unwilling host of the [nuclear waste] repository." [92] We have held that the United States wrongfully denied Nevada funds for studies related to Yucca Mountain's suitability as a site,[93] and that Nevada wrongfully attempted to block site characterization activities authorized by federal law.[94] History strongly suggests that the resolution of this controversy will involve substantial conflict and friction. Abstaining now, based on *Younger*, would thus be disingenuous. It makes little sense to invoke a doctrine that aims to avoid federal-state conflict in a case where such conflict has been raging for over ten years.[95]

Because conflict is inevitable in this case, the choice of forum must be influ-

89. *Composite State Bd.*, 656 F.2d at 136.

90. *Id.*

91. *Id.; Commonwealth of Pa.*, 923 F.2d at 1078–79.

92. *State of Nevada v. Burford*, 708 F.Supp. 289, 300 (D.Nev.1989). *See generally* Mark E. Rosen, "*Nevada v. Watkins:* Who Gets the Shaft?," 10 Va. Envtl. L.J. 239, 257–64 (Spring 1991) (chronicling the many fronts upon which Nevada has been fighting the prospective siting of a national nuclear waste repository at Yucca.Mountain).

93. *State of Nevada v. Herrington*, 777 F.2d 529, 536 (9th Cir.1985). In a more recent related controversy, we held that the DOE's denial of Nevada's request for funds for reviewing, monitoring, and evaluating the DOE's site characterization activities for Yucca Mountain nuclear waste repository did not violate the NWPA. *See State of Nevada v. United States Dep't of Energy*, 133 F.3d 1201 (9th Cir.1998).

94. *Watkins*, 914 F.2d at 1561.

95. Even if we were inclined to hold that *Younger* abstention is appropriate in a case in which the federal government sues a state, it is not clear *Younger* abstention would apply. The Nevada State Engineer's decision is a final agency decision that may be appealed in state court. In *NOPSI*, the Supreme Court noted that in the only two cases in which it has held that *Younger* principles preclude a federal court from enjoining state agency action, that action was not final, but rather was in midstream. *See* 491 U.S. at 370 n. 4, 109 S.Ct. 2506 (citing *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), and *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). The Supreme Court declined to decide whether, when the agency action is complete but may be appealed, *Younger* prevents federal intervention on the theory that the agency adjudication and its subsequent appeal constitute an "uninterruptible whole." *NOPSI*, 491 U.S. at 368–69, 109 S.Ct. 2506.

enced by the fact that the federal government is asserting its rights against a state and has a great interest in having the federal court conduct the preemption analysis. The dissent does not recognize the interest of the federal government in choosing the forum when it itself is a party. Only one of the abstention cases cited by the dissent involved the United States as a party and the court only allowed for abstention in that case because the State Tax Appeal Board's own interpretation of state tax law could avoid the constitutional question.[96] There is no way to avoid the preemption issue in this case, so *Younger* abstention should not apply, allowing the federal government access to its forum of choice.

## IV

## CONCLUSION

As plaintiff, the United States controls its complaint. It alleged that the NWPA preempts Nevada Revised Statute 459.910. Because this federal preemption claim is not insubstantial, it confers federal question jurisdiction. In addition, the substantiality of the United States' claim, coupled with the absence of the requirements for the various forms of abstention, makes abstaining improper. Accordingly, we VACATE the district court's dismissal of this action and REMAND the case for adjudication on the merits.

VACATED AND REMANDED.

HUG, Circuit Judge, Dissenting:

I respectfully dissent. The majority opinion concludes that *Younger* abstention is inappropriate here because that doctrine aims to avoid federal-state conflict and such conflict has been "raging for over ten years" in this case. This broad characterization of *Younger* overlooks the heart of the doctrine and that the circumstances here fall squarely under the concerns warranting such abstention.

While the majority correctly recognizes that the United States and the state of Nevada have litigated issues involving the Yucca Mountain site for years, this does not render abstention under *Younger* disingenuous. *Younger* stresses respect for comity and federalism, not just generally, but specifically in the form of "proper deference to a state's interest in ongoing proceedings in its own forums, and deference to a state judiciary's power to consider constitutional claims." *United States v. Ohio*, 614 F.2d 101, 104 (6th Cir.1979) (citing *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977)). Accordingly, an ongoing controversy here between the federal and state governments does not render *Younger* inapplicable where a federal court would disrupt the integrity of the state's judicial system by intervening in mid-process. *See Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). *Younger* "and its progeny espouse a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances." *Id.* Such an intrusion involves more than just a conflict between a state and the federal government as federal intervention in such proceedings "would demonstrate a lack of respect for the State as sovereign." *New Orleans Public Service Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 369, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). *See also Moore v. Sims*, 442 U.S. 415, 423, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (describing the basic concern addressed under *Younger* as the threat to our federal sys-

96. *United States v. Ohio*, 614 F.2d 101, 104 (6th Cir.1979).

tem posed by displacement of state courts by those of the National Government).

Having concluded that *Younger*'s policy concerns are implicated, the next question to address is whether *Younger* applies here. *Younger* principles apply to pending state administrative proceedings that are judicial in nature and involve important state interests. *See Fresh International Corp. v. Agricultural Labor Relations Board*, 805 F.2d 1353, 1356 (9th Cir.1986); *Middlesex*, 457 U.S. at 433–434, 102 S.Ct. 2515 (concluding that being "judicial in nature" a state bar's disciplinary proceedings are "of a character to warrant federal-court deference"). The proceeding before the State Engineer was undoubtably judicial in nature, complete with hearings, testimony, motions and a decision written like that of a judicial opinion. The agency proceeding "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *NOPSI*, 491 U.S. at 370, 109 S.Ct. 2506 (quoting *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226, 29 S.Ct. 67, 53 L.Ed. 150 (1908)) (internal quotations and citations omitted).

Under the three-pronged test established by the Supreme Court, *Younger* "abstention is appropriate in favor of a state court proceeding if (1) the state proceedings are ongoing; (2) the proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to raise federal questions." *Fresh International Corp.*, 805 F.2d at 1357–58 (citing *Middlesex*, 457 U.S. at 432, 102 S.Ct. 2515). Accordingly, we should first determine whether the state proceedings had been initiated before any proceedings of substance on the merits have taken place in federal court. *Id.* at 1358.

The administrative hearing here was initiated, a decision rendered by the agency and an appeal to a state court filed prior to the initiation of the federal action. For *Younger* purposes, the State's trial-and-appeals process is treated as a unitary system and, as noted above, for a federal court to intervene in mid-process "would demonstrate a lack of respect for the State as a sovereign." *NOPSI*, 491 U.S. at 369, 109 S.Ct. 2506. For the same reason, a party may not seek federal review by terminating the state judicial process prematurely—forgoing the state appeal to attack a trial court's judgment in federal court. *Id.* A necessary concomitant of *Younger* is that a party must exhaust his state appellate remedies before seeking relief in federal court from the judgment of a state judicial tribunal. *Id.*

Our Court has applied the same principle to processes started in an administrative agency viewing the litigation from agency through courts as a unitary process that should not be disrupted by premature federal intervention. *See Fresh International Corp.*, 805 F.2d 1353 (concluding that state proceedings were ongoing for *Younger* purposes where agency decision was issued and appeal was taken to the state appellate court as provided by state law).[1] Accordingly, federal intervention seems no more permissible at the conclusion of the administrative stage than during it and, thus, the state proceedings here are ongoing as the United States sought relief from the State Engineer's decision by appeal to state court as required under Nevada law. *See* Nev.Rev.Stat. 533.450.

Next, we must consider whether there is a sufficiently important state interest that would be affected by the federal action so as to warrant *Younger* abstention. *Id.* at 1358. The Supreme Court has cited with approval other courts' decisions that have

---

1. *NOPSI* did not disturb this precedent as there the Supreme Court assumed without

deciding that such application was correct. 491 U.S. at 368, 109 S.Ct. 2506.

held important state interests to exist in a broad range of circumstances including teacher tenure termination proceedings, and police officer disciplinary proceedings for making false statements. *See id.* at 1359–60 (referencing *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986)). Nevada has a substantial interest in carrying out its regulatory process for water permit applications without federal intervention, particularly where the placement of a nuclear waste repository in the state is involved.

While a claim that a state law is preempted by a federal law certainly factors into our consideration of whether a state's interest is substantial to invoke *Younger,* merely raising preemption does not automatically render *Younger* abstention inappropriate unless preemption is readily apparent. *Id.* at 1361. Preemption is not readily apparent in this case because the DOE seeks permits for activities not yet authorized by Congress under the Nuclear Waste Policy Act ("NWPA").

We have previously held that Congress preempted N.R.S. § 459.910 with regard to the characterization study and evaluation of the Yucca Mountain site. *State of Nevada v. Watkins,* 914 F.2d 1545 (9th Cir.1990). Thus, the State Engineer is clearly prohibited from denying water permits based on N.R.S. § 459.910 for this evaluation and study period. However, Congress has not yet acted to authorize the construction and operation of a permanent facility at Yucca Mountain. That will take an additional congressional act after the State of Nevada has had an opportunity to protest as provided under the NWPA. We have no way of knowing when or if that congressional act will occur or what it would provide.

The application made by the DOE is a combined application which seeks to obtain water not only for the continuation of the evaluation period, but also for the operation and construction of the facility. The State Engineer denied this combined application, in part because it requested permits for such acts which are not yet authorized under the NWPA. Were the DOE simply to seek an extension of the water permits for the continued evaluation of the site, then the State Engineer could not refuse to extend the permits on the grounds that N.R.S. 459.910 prohibits them. *See id.* (holding that for that aspect, N.R.S. 459.910 is preempted). Accordingly, preemption is not readily apparent in this case as the DOE's combined applications seek permits for conduct not yet authorized by Congress. I reach what I find a logical and compelling conclusion: an Act which Congress has not yet passed cannot preempt state law or state agency decisions. The DOE could clearly present a revised application limiting its request to activities authorized under the NWPA.

Finally, we must consider whether the United States will have an adequate opportunity to raise its preemption claim in the state proceedings. *Fresh International Corp.,* 805 F.2d at 1362. Nevada law provides that any aggrieved party seek review of the State Engineer's decision by appeal which "shall be initiated" in the court of the county in which the matters affected are situated. Nev.Rev.Stat. 533.450(1). Similar to the statute providing for state court appeal from the administrative decision in *Fresh International Corp.,* the Nevada statute contains no restrictions on the court's power to hear questions of constitutionality or preemption. *See id.* While the proceedings are "informal and summary," appeals from the district court may be taken to the supreme court in the same manner as other civil cases. Nev.Rev.Stat. 533.450(2) & (8). So long as the United States may raise its federal claims in state court review of the administrative proceeding, this prong is satisfied. *Id.* (citing *Dayton,* 106 S.Ct. at 2724).

The circumstances here satisfy all three prongs for *Younger* abstention. I respectfully disagree with the majority's conclusion that the interests of *Younger* would not be served by abstention where, as here, there exists a history of conflict and friction between state and federal government on this issue. I believe the facts here fit squarely under the policy to invoke *Younger* to avoid the federal court's disruption of the integrity of the state's judiciary process by "intervening in mid-process" and demonstrating a "lack of respect for the State as sovereign" in order to address a preemption claim based on the speculation of an Act that Congress has not yet passed. *NOPSI*, 491 U.S. at 369, 109 S.Ct. 2506. Accordingly, I would affirm the district court's decision to abstain.[2]

---

**2.** While the district court relied on other abstention doctrines and not *Younger,* we ·may affirm on any ground that has support in the record. *Keyser v. Sacramento City Unified School District,* 238 F.3d 1132, 1139 (9th Cir. 2001).