340 F.3d 1053
 Ralph A. YOUNG, dba Hanalei Sport Fishing & Tours; Whitey's Boat Cruises, Inc., a Hawaii corporation dba Na Pali Catamarans; Robert F. Butler, Jr., dba Capt. Sundown Enterprises, Plaintiffs-Appellees,
v.
Gilbert COLOMA-AGARAN, in his capacity as Chairperson, Department of Land and Natural Resources, State of Hawaii; Mason Young, in his capacity as Acting Administrator, Division of Boating and Ocean Recreation, Department of Land and Natural Resources, State of Hawaii; Vaughan E. Tyndizk, in his capacity as Kauai District Manager, Division of Boating and Ocean Recreation, Department of Land and Natural Resources, State of Hawaii, Defendants-Appellants.
 No. 02-15202.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 9, 2003 — Honolulu, Hawaii.
 Filed August 25, 2003.
 
 Yvonne Y. Izu, Deputy Attorney General, State of Hawaii, Honolulu, Hawaii, for the defendants-appellants.
 Dennis Niles, Paul, Johnson, Park & Niles, Wailuku, Hawaii, for plaintiffs-appellees Ralph A. Young & Whitey's Boat Cruises; Jack Schweigert, Honolulu, Hawaii, for plaintiff-appellee Robert Butler, Jr.
 Appeal from the United States District Court for the District of Hawaii; Helen Gillmor, District Judge, Presiding. D.C. No. CV-00-00774-HI.
 Before: Alfred T. GOODWIN, Pamela Ann RYMER, and Thomas G. NELSON, Circuit Judges.
 OPINION
 GOODWIN, Circuit Judge.
 
 
 1
 The district court granted summary judgment and a permanent injunction in favor of three commercial tour boat operators who challenged a state regulation that prohibits them from operating their tour boats in Hanalei Bay, located on the northern coast of Kauai. We affirm.
 
 I. BACKGROUND
 
 2
 Ralph A. Young, Whitey's Boat Cruises, Inc., and Robert F. Butler are commercial tour boat operators conducting passenger tours from Hanalei Bay to the Na Pali coast on Kauai. In order to conduct boat tours in Hanalei Bay, the plaintiffs have held at least two types of licenses in the recent past: federal and state.
 
 
 3
 The U.S. Coast Guard issued the plaintiffs' federal licenses (the "coasting licenses") and these licenses include endorsements allowing licensees to engage in coastwise trade in the navigable waters of the United States, which include Hanalei Bay. The Hawaii Department of Land and Natural Resources' (the "Department") administrative regulations require the plaintiffs to obtain state-issued commercial use permits (the "use permits") to operate in Hanalei Bay. Until recently, state regulations limited the number of use permits issued and imposed certain conditions on the activities of the permittees (e.g., setting numerical ceilings on passengers ferried and trips made). Among other conditions, the use permits contained an automatic termination provision in the event that the Department adopted an administrative rule prohibiting the permitted conduct.
 
 
 4
 In October 2000, the state adopted the regulation at issue in this case (the "ban"). The ban states in relevant part:
 
 
 5
 (1) No commercial vessel shall operate at or use the Hanalei River, Hanalei Bay ocean waters, or Anini Beach launching ramp for any commercial purposes without a commercial use permit.
 
 
 6
 (2) No commercial use permits shall be issued for commercial vessels to operate at or on the Hanalei River or Hanalei Bay ocean waters, except that up to two commercial use permits may be issued for kayaks to operate on the Hanalei River or Hanalei Bay ocean waters.
 
 
 7
 Haw. Admin. R. § 13-256-36. The Department notified the plaintiffs that their use permits would automatically expire on November 30, 2000, the effective date of the ban. On December 1, 2000, the plaintiffs filed their complaint seeking a declaratory judgment and injunctive relief on the ground that the ban violates the federal Constitution.
 
 
 8
 Both parties moved for summary judgment. The district court granted a permanent injunction in favor of the plaintiffs, concluding that the ban violates the Supremacy Clause of the Constitution because it conflicts with federal licensing laws. The district court also found that the ban violates the Commerce Clause.
 
 II. DISCUSSION
 
 A. FEDERAL PREEMPTION
 
 
 9
 Federal law may preempt state law in three ways: (1) federal law may explicitly preempt state law in a given area; 12017(2) federal law may implicitly preempt state law by dominating regulation in a given area; or (3) state law may actually conflict with federal law. Barber v. State of Hawaii, 42 F.3d 1185, 1189 (9th Cir.1994). In the instant case, the plaintiffs argue that the ban actually conflicts with, and therefore is preempted by, federal law.
 
 
 10
 Actual conflict, or "conflict preemption," occurs "where it is impossible ... to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Freightliner Corp. v. Myrick, 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (internal citation and quotation marks omitted); see also Service Eng'g Co. v. Emery, 100 F.3d 659, 661 (9th Cir.1996). To determine whether a conflict exists requires an understanding of both the federal and state regulations, as well as how they interact. See Perez v. Campbell, 402 U.S. 637, 644, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).
 
 
 1. The Coasting Licenses
 
 
 11
 The coasting licenses are issued pursuant to shipping laws set forth in title 46 of the United States Code. Section 12106 permits issuance of a coasting license to a vessel that
 
 
 12
 (1) is eligible for documentation;
 
 
 13
 (2)(A) was built in the United States; or
 
 
 14
 (B) if not built in the United States, was captured in war by citizens of the United States and lawfully condemned as a prize ...; and
 
 
 15
 (3) otherwise qualifies under laws of the United States to be employed in the coastwise trade.
 
 
 16
 46 U.S.C. § 12106(a). Eligibility for documentation turns largely on the ownership of the subject vessel. See 46 U.S.C. § 12102. A vessel must have a coasting license to be employed in the coastwise trade. 46 U.S.C. § 12106(b); 46 C.F.R. § 67.7. Coastwise trade includes the transportation of passengers. Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 215-19, 6 L.Ed. 23 (1824).
 
 
 17
 Despite the generality of the requirement for a coasting license, or perhaps because of it, courts have broadly construed the scope of the license. As early as 1824 in Gibbons v. Ogden, a coasting license has been held to unequivocally grant the authority to carry on the coasting trade. Id. at 212. The sweeping nature of the coasting license is premised on the idea that the right to engage in interstate commerce derives from natural law and the Constitution confers absolute control of its regulation to congress. Id. at 211; cf. 58 Fed.Reg. 60256-01, 60258 (Nov. 15, 1993) (to be codified at 46 C.F.R. pts. 1 & 67) ("[T]he long-held policy of the Coast Guard [is] that the right to engage in the restricted trades is an entitlement that appertains to the vessel and arises as a matter of law upon meeting the requisite conditions."). The Coast Guard's regulations reflect the law established in Gibbons that a coasting license "entitles a vessel to employment in unrestricted coastwise trade." 46 C.F.R. § 67.19(a).
 
 
 18
 Since the Gibbons decision, several courts have considered federal regulation of navigation and trade licensing on navigable waters. It is well-settled that "[a] state may not exclude from its waters a ship operating under a federal license." Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440, 447, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960); see also Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963) ("That no State may completely exclude federally licensed commerce is indisputable....").
 
 
 19
 The Supreme Court has recognized, however, that the right secured by a coasting license is not boundless. In Douglas v. Seacoast Products, Inc., it expressly noted "the negative implication of Gibbons: that States may impose upon federal licensees reasonable, nondiscriminatory conservation and environmental protection measures otherwise within their police power." 431 U.S. 265, 277, 97 S.Ct. 1740, 52 L.Ed.2d 304 (1977). Thus, provided that such regulations do not conflict with federal law, a state maintains power to adopt such reasonable and nondiscriminatory laws.
 
 
 2. Hawaii's Ban
 
 
 20
 We must analyze the Department's ban against this backdrop of expansive federal regulation of navigation and commerce. Hawaii began regulating the use of Hanalei Bay in the mid-1980s in response to user conflicts occurring on the north shore of Kauai. In 1988, a permitting system for up to fifteen commercial vessels was established under the supervision of the Hawaii Department of Transportation. In 1992, the Department of Land and Natural Resources assumed management of Hanalei Bay without any change to the relevant regulations (although by 1999, the number of use permits issued had dwindled to five).
 
 
 21
 In 1999, the state considered a proposal to prohibit commercial boating in Hanalei Bay. A report from the public hearing on the proposal indicates that regulators were concerned about putting to rest "years of turmoil" over tourist activities in Hanalei, as well as maintaining the natural beauty of the Hanalei area. Comments from the public were by and large hostile to continued commercial tour boat activities in Hanalei Bay. Approximately five months later, the ban took effect and the Department revoked the plaintiffs' use permits.[1]
 
 
 3. Conflict Preemption Analysis
 
 
 22
 We conclude that the ban, in conjunction with the relevant federal shipping laws, violates the Supremacy Clause. Simply stated, the ban completely excludes the plaintiffs from conducting their federally-licensed tour boat businesses in Hanalei Bay. We are sympathetic to the challenges posed by the user conflicts occurring in the bay. We hold, however, that the state's refusal to issue use permits under any conditions has effectively rendered it impossible for the plaintiffs to comply with both federal and state law in order to ply their trade. See Florida Lime, 373 U.S. at 142-43, 83 S.Ct. 1210.
 
 
 23
 The state argues that the Department was exercising the state's police power to alleviate user conflicts at Hanalei when it adopted the ban. Indeed, the Supreme Court has held that "[i]n the exercise of that power, the states and their instrumentalities may act, in many areas of interstate commerce and maritime activities, concurrently with the federal government." Huron Portland, 362 U.S. at 442, 80 S.Ct. 813. However, the Court went on to point out the "basic limitations" of such power: "Evenhanded local regulation to effectuate a legitimate local public interest is valid unless preempted by federal action." Id. at 443, 80 S.Ct. 813 (emphasis added). Thus, even if the ban is an exercise of concurrent power, the state's contention is immaterial to our analysis; as we have explained above, the ban actually conflicts with the federal licensing scheme.
 
 III. CONCLUSION
 
 24
 Finally, we note that our holding is consistent with the Fourth Circuit's recent decision in Waste Management Holdings, Inc. v. Gilmore, 252 F.3d 316, 348 (4th Cir.2001), cert. denied, 535 U.S. 904, 122 S.Ct. 1203, 152 L.Ed.2d 142 (2002), where that court struck down a Virginia statute that prohibits barges from transporting municipal waste on the Rappahanock, James, and York Rivers. In an attempt to distinguish this case from Waste Management, the state insists that Hanalei Bay is an insignificant body of water compared to the three rivers at issue in that case. This argument may support the state's position under a Commerce Clause analysis, but it is of no avail in our preemption analysis.
 
 
 25
 Because we affirm the judgment of the district court under preemption analysis, we decline to consider whether the ban violates the Commerce Clause.
 
 
 26
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The parties did not brief or argue at trial the effect of Hawaii Revised Statute § 200-6(b), which allows certain vessels to be "anchor[ed], moor[ed], or otherwise place[d]" in Hanalei Bay without a use permit. Therefore, we do not address the issue here