FRIENDS OF THE EAST LAKE SAM-
MAMISH TRAIL, Cascade Land Con-
servancy, Robert W. & Bente K. Pas-
ko, Plaintiffs,

v.

CITY OF SAMMAMISH, Defendant,

and

East Lake Sammamish Community
Association, Intervenor–
Defendant.

No. C03–2793C.

United States District Court,
W.D. Washington,
At Seattle.

Jan. 5, 2005.

Order Denying Reconsideration
Feb. 14, 2005.

Darwin P. Roberts, Matthew Cohen, Heller Ehrman White & McAuliffe, Peter

R. Goldman, Washington Forest Law Center, Seattle, WA, for Plaintiffs.

Bruce Laurence Disend, Kenyon Disend PLLC, Issaquah, WA, for Defendant.

Michael P. Witek, Helsell Fetterman LLP, Peter J. Eglick, Gordon Thomas Honeywell Malanca Peterson & Daheim, Seattle, WA, for Plaintiff and Intervenor–Defendant.

## ORDER

COUGHENOUR, District Judge.

This matter has come before the Court on Plaintiffs' Motion for Summary Judgment (Dkt. No. 24), Intervenor–Defendant's Motion for Summary Judgment (Dkt. No. 39), and Defendant's Cross Motion for Summary Judgment (Dkt. No. 41). The Court has considered the papers submitted by the parties in support of and in opposition to the motions and determined that oral argument is not necessary. For the reasons set forth in this Order, Plaintiffs' Motion is hereby GRANTED, Intervenor–Defendant's Motion is hereby DENIED, and Defendant's Cross Motion is likewise DENIED.

## I. BACKGROUND

This action concerns the development of a recreational trail along a seven-mile section of the former Burlington Northern Santa Fe railroad right-of-way that runs along the east shore of Lake Sammamish.[1]

Plaintiffs, the non-profit organizations Friends of the East Lake Sammamish Trail ("Friends") and the Cascade Land Conservancy ("CLC"), and Robert and Bente Pasko, residents of the City of Sammamish and members of Friends, support development of the East Lake Sammamish Trail on the right-of-way. Defendant City of Sammamish and Intervenor–Defendant East Lake Sammamish Community Association ("ELSCA"), an association of Sammamish residents, many of whom reside along the east shore of Lake Sammamish along the former railbed, (hereinafter collectively "Defendants") contest development of the trail. On September 11, 2003, Plaintiffs filed the instant action, challenging the constitutionality of the "practical alternative" prong of Interim Sammamish Development Code § 21A.24.070 and the identical Sammamish Municipal Code § 21A.50.070(2)(a)[2] by arguing that it is preempted by the National Trails Systems Act, 16 U.S.C. § 1247(d).

## II. FACTS

In the late 1880s the Seattle Lake Shore & Eastern Railroad built a rail line from Issaquah north along the east shore of Lake Sammamish to Woodinville. The line, known as the Issaquah spur, eventually became part of the Burlington Northern/Santa Fe Railroad ("BNSF") system. In 1996, BNSF ceased operations on its tracks through the East Lake Sammamish corridor and a year later CLC acquired BNSF's interests in the railbed by quit

---

1. The right of way, which varies from 50 to 200 feet wide, traverses parts of Redmond, Sammamish and Issaquah. Approximately 7.2 miles of the corridor lie within the City of Sammamish.

2. The City of Sammamish recodified its ordinances on October 7, 2003. Former Interim Sammamish Development Code ("ISDC")

§ 21A.24.070 is now recodified, without change, at Sammamish Municipal Code ("SMC") § 21A.50.070. The Court will refer to the recodified Public Agency and Utility Exception Ordinance, SMC § 21A.50.070, in the Analysis and Conclusion sections of this Order.

claim deed. CLC commenced Surface Transportation Board ("STB") proceedings to railbank[3] the right-of-way. The STB issued its Notice of Interim Trail Use ("NITU")[4] in September 1998. The NITU Decision provides in relevant part that "[i]f an agreement for interim trail use/railbanking is reached by the 180th day after service of this decision and notice, interim trail use may be implemented." (Ex. 1 to Roberts Decl. in Supp. of Pls.' Mot. for Summ. J. ("Roberts Decl.").) CLC then quit claimed its interests in 10.9 miles of the railbanked railbed to King County on September 18, 1998. On December 15, 2000, the King County Council unanimously adopted an ordinance and appropriated funds for development of a soft surface trail on the railbanked East Lake Sammamish right-of-way.

King County then applied to the cities of Issaquah, Redmond, and Sammamish for land use permits to construct a gravel trail on the existing crushed rock surface of the rail corridor. On May 7, 1999, King County filed a grading permit application for its trail. Since parts of the proposed trail would pass through areas classified as "wetland" and "wetland buffer" under SMC ch. 21A.50, King County had to apply for a Public Agency Utility Exception ("PAUE") to proceed with the trail's development. The Sammamish PAUE ordinance does not permit destruction or alteration of sensitive areas for public agency and utility projects unless it is shown that there is no practical alternative with less impact to sensitive areas:

> The Department shall review the [PAUE] application based upon the following criteria: (a) there is no other practical alternative to the proposed development with less impact on the sensitive area; and (b) the proposal minimizes the impact on sensitive areas.

SMC § 21A.50.070.

King County filed a PAUE application with the City of Sammamish on April 13, 2001. On April 12, 2002, the City of Sammamish Planning Director issued an initial City decision on the PAUE application, authorizing King County to pour a new gravel surface on the railbed, and requiring King County to offset and mitigate the loss of wetland buffer by preserving and enhancing other wetland areas within the railroad right-of-way. ELSCA appealed the City's decision, and King County and Mark Cross and Bente Pasko (both members of Friends) filed their own cross-appeals.

The City of Sammamish appointed a pro tem hearing examiner to conduct the appeal. On April 24, 2003, following discovery and a seven-day trial on the appeals, the hearing examiner issued his decision reversing the City's decision and denying the requested PAUE based on his findings and conclusions that practical alternatives existed[5] with fewer impacts on protected environmentally sensitive areas than would

---

**3.** "Railbanking" describes the process of preserving inactive railroad rights-of-way as recreational trails.

**4.** A NITU authorizes potential interim use of a railbed for trail purposes subject to a trail manager's assuming financial responsibility for the property and subject to possible future reconstruction and reactivation of the right-of-way for rail service under 49 C.F.R. § 1152.29.

**5.** The hearing examiner agreed with ELSCA that its plan (named the Rundle–Haro Plan), which detoured for various segments away from the wetland areas on the railbanked right-of-way, was a practical alternative with fewer impacts.

occur with the County's proposed railbed-only trail alignment.

King County and ELSCA appealed the hearing examiner's decision to the Snohomish County Superior Court. On March 16, 2004, the court reversed certain elements of the PAUE decision and remanded the case to the City for further proceedings. It appears that the case is still pending before the City. Of note is the Superior Court's finding that King County was precluded from raising the issue of federal preemption because it had failed to raise the issue before the hearing examiner. Despite this finding the court went on to find that even if the issue could be raised, the argument would fail as there is no federal preemption.

The PAUE for which King County applied would authorize only construction of a soft surface trail on the East Lake Sammamish rail corridor. The County is currently planning for a permanent paved trail to replace the interim trail. Should the County apply to build the permanent trail on the railbanked right-of-way, all parties to this litigation agree that the permanent trail will require another PAUE from the City of Sammamish that satisfies the requirements of SMC § 21A.50.070. Thus, this issue is still ripe for review.

As of April 2004, the soft surface East Lake Sammamish Trail was completed and open to the public in Redmond, Issaquah and unincorporated King County. The middle seven miles through Sammamish, however, remained closed.

## III. ANALYSIS

Currently before the Court is Plaintiffs' Motion for Summary Judgment, which ar-

gues that the federal railbanking statute, 16 U.S.C. § 1247(d), and the STB Order which authorized King County to develop an interim trail on the inactive railroad right-of-way, preempt the application of the "practical alternative" prong of SMC § 21A.50.070(2)(a) to any railbanked railroad right-of-way. Defendant City of Sammamish filed a Cross Motion for Summary Judgment, countering that Plaintiffs lack standing to bring this claim. Intervenor–Defendant ELSCA also sets forth multiple grounds for summary judgment against Plaintiffs in its own Motion for Summary Judgment, including Plaintiffs' failure to join an indispensable party (King County), failure to state a claim upon which relief can be granted, and failure to exhaust administrative remedies. Alternatively, ELSCA proposes that the *Pullman* abstention doctrine dictates that this Court abstain from deciding the federal preemption issue set forth in Plaintiffs' Complaint. The Court will address Defendants' procedural and jurisdictional arguments first.[6]

### A. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions, and provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether an issue of fact exists, the court must view all evidence

6. Although the City of Sammamish did not specifically join in ELSCA's Motion for Summary Judgment, both parties presumably desire the same outcome—an entry of summary judgment against Plaintiffs. Therefore, for ease of reference, the Court will refer to the various arguments as arising collectively from "Defendants" rather than identify which party set forth which argument.

in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The moving party bears the burden of showing that there is no evidence which supports an element essential to the non-movant's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The parties all assert that there are no material facts at issue, thus this matter is particularly well suited for decision by summary judgment. The Court agrees.

### B. Standing

■ Defendants challenge Plaintiffs' standing to bring this action by characterizing their interest as a mere desire for speedier construction of a recreational trail, and by arguing that Plaintiffs cannot demonstrate that they have suffered an injury to a legally protected interest. Defendants further argue that prudential limitations bar Plaintiffs' suit.

■ A showing of standing is an essential predicate to federal jurisdiction. *Florida Audubon Soc'y v. Bentsen,* 94 F.3d 658, 663 (D.C.Cir.1996). The Plaintiffs in this case, as the parties asserting federal jurisdiction, have the burden of establishing the elements of standing. *Los Angeles County Bar Ass'n v. Eu,* 979 F.2d 697, 701 (9th Cir.1992). "To meet this burden, the litigant must clearly and specifically set forth facts sufficient to satisfy those Article III standing requirements."

*Whitmore v. Arkansas,* 495 U.S. 149, 155–56, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Those requirements are as follows:

(1) that the plaintiff have suffered an "injury in fact"—— an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of—— the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (2) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bennett v. Spear,* 520 U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Since Defendants only challenge the existence of an "injury in fact" and the applicability of prudential limitations, the Court will only address these two aspects of standing.

#### 1. Injury in Fact

■ Plaintiffs must show that they have "sustained or [are] immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). To support their argument that Plaintiffs have failed to assert a cognizable injury, Defendants rely on *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). In that case the Supreme Court found that the Sierra Club's asserted interest in "the

conservation and the sound maintenance of the national parks, game refuges, and forests of the country" was insufficient for standing purposes because there was no allegation any of the Sierra Club members ever used the area in question. The Supreme Court stated:

> The Sierra Club failed to allege that it or its members would be affected in any of their activities or pastimes by the...development. Nowhere in the pleadings or affidavits did the Club state that its members use Mineral King for any purpose, much less that they use it in a way that would be significantly affected by the proposed actions of respondents.

*Id.* at 735, 92 S.Ct. 1361. *See also Lujan v. National Wildlife Federation,* 497 U.S. 871, 883, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (finding that plaintiffs were not entitled to standing unless they could demonstrate that they used specific federal lands that were being mined under the new federal regulations). The case at bar, however, cannot fail on these same grounds since Plaintiffs have alleged that they do use the area in question, and that their activities and pastimes have been affected by the proposed trail development plans. (*See* Pasko Decl. in Supp. of Pls.' Mot. for Summ. J. ¶¶ 2–4; Duvernoy Decl. in Supp. of Pls.' Mot. for Summ. J. ¶¶ 3–4.) Defendants' argument also ignores CLC's economic and property interests through its investment in the development of the trail, and its contractual interest in the right-of-way, should King County fail in its efforts to develop the trail. (*See* Duvernoy Decl. ¶ 3.) *See, e.g., Tyler v. Cuomo,* 236 F.3d 1124, 1132 (9th Cir.2000) (finding standing based on plaintiffs' property interests).

█ In contrast to *Sierra Club,* the Court finds *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), to be more on-point. In *SCRAP* the Supreme Court upheld the standing of a group of students who maintained that their enjoyment of the forests, streams, and mountains in the Washington D.C. areas would be lessened as a result of an increase in railroad freight costs that would then have a domino effect of discouraging the use of recycled goods due to higher shipping costs which would lead to more use of natural resources, including more mining and pollution in the immediate area. *Id.* at 688, 93 S.Ct. 2405. *See also Friends of the Earth v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (holding plaintiffs had standing to challenge environmental harm because they alleged that they used the affected areas for recreational purposes). The lesson from these cases is that a plaintiff's complaint must specifically allege that he or she has personally suffered an injury. Plaintiffs, by alleging personal injuries, demonstrate that they understand this lesson. (*See, e.g.,* Compl. ¶¶ 2.1–2.3.) In sum, the Court finds that Plaintiffs have demonstrated "injury in fact" through an inability to use and enjoy the trail as a result of its stymied development allegedly due to the City of Sammamish's PAUE permitting requirements.

### 2. Prudential Limitations

█ Defendants also object that Plaintiffs lack standing based on prudential limitations invoked to guard against generalized grievances. The prohibition against generalized grievances prevents individuals from suing if their only injury is as a citizen. *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The existence of a generalized

grievance is not determined simply by the number of people affected. *Desert Citizens Against Pollution v. Bisson,* 231 F.3d 1172, 1177 n. 5 (9th Cir.2000). Rather, a generalized grievance is where the plaintiffs sue solely as citizens concerned with having the government follow the law. *Northern Plains Res. Council v. Lujan,* 874 F.2d 661, 668 (9th Cir.1989). As the Court has already found, however, Plaintiffs have alleged a legally cognizable injury, which inherently requires a conclusion that Plaintiffs' injuries are personal, not merely general. The fact that other King County and Sammamish residents might also claim injury based on the inability to use the proposed trail does not mandate that the Court find Plaintiffs' grievance to be too general to support standing. To the contrary, the Court finds that Plaintiffs have alleged an "injury in fact" and that prudential limitations do not apply. As a matter of law Defendants' standing arguments must fail. Plaintiffs have the standing necessary to bring this suit.

### C. Necessary and Indispensable Party

■ Defendants further argue that King County, as the trail proponent and property owner, is a necessary party under Fed.R.Civ.P. 19(a), that King County cannot be joined because it lacks standing to sue, and that King County should be deemed "indispensable" under the four factor test in Fed.R.Civ.P. 19(b), forcing dismissal of this action.

Fed.R.Civ.P. 19 ("Rule 19") governs the compulsory joinder of parties needed for just adjudication. In general, "necessary" refers to those absentees who should be joined in the pending case; if joinder is infeasible, the present action can continue without a necessary party. 4 James W. Moore et al., *Moore's Federal Practice and Procedure* § 19.02[2][c] (3d ed.1997). "Indispensable" refers to those absentees who must be joined in the pending case if it is to go on; if joinder is infeasible the present action must be dismissed. *Id.* In federal question cases, such as the case at bar,[7] federal law governs whether any party is "necessary" or "indispensable." 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. and Proc.: Civil 3d* § 1603 at 30.

■ Analysis under Rule 19 is a two-step process. First the Court must decide whether King County, the absentee, is a "necessary party" under Rule 19(a). If the Court finds that King County is a necessary party, then it must consider whether King County can be joined, and if not, whether "in equity and good conscience the action...should be dismissed." *Washington v. Daley,* 173 F.3d 1158, 1169 (9th Cir.1999). The burden of proving that a case should be dismissed for failure to join a necessary party falls to the moving party. *Makah Indian Tribe v. Verity,* 910 F.2d 555, 558 (9th Cir.1990).

#### 1. Is absentee needed for just adjudication?

An absent party is a necessary party if a court finds any of the following requisites have been met:

(1) in the person's absence complete relief cannot be accorded among those al-

---

7. This matter does not, as Defendants suggest, arise out of King County's property interest in the railbanked right-of-way. Rather, the cause of action is federal preemption, and thus arises "under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331.

ready parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Fed.R.Civ.P. 19(a).

█ Defendants argue that complete relief cannot be accorded in the County's absence since King County would not be bound by a decision from this Court adverse to Plaintiffs. The purpose of the "complete relief" clause is to avoid duplicative litigation. *See Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir.), *cert. denied*, 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983). It is to be interpreted narrowly, which is to say that the concern is in rendering complete justice among those already joined, not in finding an absentee is necessary simply to avoid multiple litigation. *Id.* at 1046. The Court finds that a ruling from this Court would provide complete relief among those already parties to this suit. Defendants' concern that King County would not be bound by a decision in Defendants favor is both irrelevant given the Court's findings on the federal preemption issue, *see* discussion *infra* at 14–15, and relates solely to the avoidance of multiple litigation.

█ Defendants further argue under Rule 19(a)(2)(i) that King County is a necessary party because it is the property owner, project permit applicant, the entity financially responsible for the railbed pursuant to the NITU, and will ultimately operate the trail. It is unquestionable that King County has an interest in the case at bar. However, interest in the subject matter alone does not make one a necessary party. Given that King County is aware of this litigation and has chosen to entrust Plaintiffs to adequately litigate the issue of federal preemption (*see* Decl. of Ron Sims in Opp. to ELSCA's Mot. for Summ. J. ¶ 10), it would make little sense for the Court to find that King County's absence would impair its ability to protect its interest.

█ Finally, Defendants express concern that the current parties could be subjected to inconsistent obligations in light of the state court decision rejecting the County's preemption claims. The Snohomish County Superior Court held that King County waived the right to litigate the preemption issue by failing to raise it before the hearing examiner. Plaintiffs were not parties to that action and are not bound by it. Therefore, a decision in this matter would simply moot that portion of the state court's order requiring application of the "practical alternative" requirement in SMC § 21A.50.070(2)(a) on remand. It does not subject Defendants to inconsistent obligations. *See Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (11th Cir.1998). Moreover, a ruling in Plaintiffs' favor by this Court does not limit the application of SMC § 21A.50.070(2)(a) to the East Lake Sammamish Trail alone—it limits its application to all railbanked rights-of-way approved for interim trail use by the STB. Finally, even if there were a risk of inconsistent obligations, which there is not, joining King County in this litigation would not obviate that risk. King County is not a necessary party.

In light of this finding, the Court need not proceed to the second step of the Rule

19 analysis. Defendants' "necessary and indispensable party" arguments fails as a matter of law.

### D. Failure to state a claim

■ Defendants argue that Plaintiffs' "purported facial challenge to a local ordinance based upon conflict preemption" does not state a claim upon which relief can be granted. Additionally, Defendants argue that Plaintiffs' failure to exhaust administrative remedies, which they avoid by characterizing this as a "facial challenge" instead of an "as applied" challenge, also bars Plaintiffs' complaint.

■ Plaintiffs have raised a conflict preemption challenge essentially arguing that since the STB has designated the East Lake Sammamish right-of-way for development of a recreational trail, it is therefore beyond the power of the City of Sammamish to require King County to secure the right to develop a trail on the right-of-way, as opposed to near the right-of-way. The Court understands this to mean Plaintiffs are arguing that any application of the City's "practical alternatives" PAUE requirement goes above and beyond merely imposing safety, land use, or zoning regulations on a trail developed on railbanked land, and thus is *per se* preempted by the federal Rails to Trails Act. *Cf. California Coastal Comm'n v. Granite Rock*, 480 U.S. 572, 580, 107 S.Ct. 1419, 94 L.Ed.2d 577 (1987). This clearly states a claim upon which relief can be granted. There are no administrative remedies requiring exhaustion before the Court can hear Plaintiffs' conflict preemp-

tion challenge. As a matter of law, the Court cannot grant summary judgment on this issue.

### E. Abstention

■ Defendants also argue that the *Pullman* abstention doctrine precludes this Court from reviewing Plaintiffs' claim. Only in exceptional cases may a court abstain from resolving claims that are within its jurisdiction. *United States v. Morros*, 268 F.3d 695, 703 (9th Cir.2001). However, abstention is appropriate when resolution of a state issue would terminate a controversy and allow constitutional adjudication to be avoided. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

Defendants' argument that the *Pullman* abstention doctrine applies ignores clear Ninth Circuit precedent stating that in preemption cases *Pullman* abstention is inappropriate.[8] *See Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 940 n. 12 (9th Cir.2002) (stating that preemption, as a federal question, is not considered a constitutional issue); *Morros*, 268 F.3d at 704 (same); *Hotel Employees and Rest. Employees Int'l Union v. Nevada Gaming Com'n*, 984 F.2d 1507, 1512 (9th Cir.1993) (same); *Knudsen Corp. v. Nevada State Dairy Com'n*, 676 F.2d 374, 377 –378 (9th Cir.1982) (same). Moreover, Defendants characterization of this case as a land use case is not an accurate description of the preemption issue before this Court. The controversy has not been terminated following remand to the City of Sammamish by the Snohomish County Superior Court

---

**8.** Perhaps that is why Defendants have abandoned the argument in their Reply and argue instead that the Court should abstain under the *Colorado River* Doctrine. Defendants raise the specter of *Colorado River* abstention for the first time in their reply brief. As such, the matter is not appropriately before the Court, and Plaintiffs' Surreply Motion to Strike (Dkt. No. 53) is therefore GRANTED.

since this case is not about how the ordinance *applies*, it is about the *constitutionality* of the ordinance. Once a definitive ruling has been issued on whether the ordinance is preempted, then the City and the state courts are free to decide how it applies to the East Lake Sammamish Trail.

### F. Preemption

The preemption doctrine is a corollary of the Supremacy Clause [9] of the United States Constitution, and in general provides that any municipal law that is inconsistent with federal law is without effect. Of the three types of preemption, explicit, field, and conflict preemption, this case only concerns the latter. Conflict preemption applies where a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Young v. Coloma–Agaran,* 340 F.3d 1053, 1056 (9th Cir.2003) (quoting *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995)). It can exist "even when Congress has chosen to include an express preemption clause in a statute." *Nathan Kimmel, Inc. v. DowElanco,* 275 F.3d 1199, 1204 (9th Cir.2002) (citing *Freightliner,* 514 U.S. at 287, 115 S.Ct. 1483). *See also Geier v. American Honda Motor Co.,* 529 U.S. 861, 869, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000).

It is without question that federal regulation of railroads is both pervasive and comprehensive. *See, e.g., Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 318, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981)In amending the National Trails System Act Congress sought to effect two purposes: (1) to "preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use," and (2) to "encourage the development of additional trails" and "assist recreation[al] users by providing opportunities for trail use on an interim basis." *Preseault v. Interstate Commerce Comm'n,* 494 U.S. 1, 17–18, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990). The section of the Act at issue in this case, 16 U.S.C. § 1247(d), provides as follows:

> The Secretary of Transportation, the Chairman of the Surface Transportation Board, and the Secretary of the Interior, in administering the Railroad Revitalization and Regulatory Reform Act of 1976, shall encourage State and local agencies and private interests to establish appropriate trails using the provisions of such programs. Consistent with the purposes of that Act, and in furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of-way...such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.

It is therefore clear that railbanked corridors remain part of the national rail transportation system subject to the jurisdiction

---

**9.** The Supremacy Clause provides: "[t]his Constitution and the laws of the United States which shall be made in pursuance thereof; in all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land." U.S. Const. art. VI, cl. 2.

of the STB. *Preseault,* 494 U.S. at 5–6 n. 3, 110 S.Ct. 914; *Good v. Skagit County,* 17 P.3d 1216, 1219 (Wash.App.2001).

Moreover, Congress has determined that every inactive railroad right of way is appropriate for trail use. *See Citizens Against Rails–To–Trails v. Surface Transp. Bd.,* 267 F.3d 1144, 1153 (D.C.Cir. 2001); *Idaho N. & Pacific R.R. Co.,* 1998 WL 146208, *8 (1998) (quoting *IOWA S. R.R. CO.—EXEMPTION—ABANDONMENT IN POTTAWATTAMIE, MILLS, FREMONT AND PAGE COUNTIES, IA,* 1989 WL 239065, 5 I.C.C.2d 496, 502–503 (1989)). While all parties agree that state and local governments have the right "to impose appropriate safety, land use, and zoning regulation on recreation trails," *see IOWA SOUTHERN,* 1989 WL 239065, 5 I.C.C.2d at 505, Plaintiffs argue that these regulations apply only to the extent that they do not frustrate development of a trail on the railbanked right of way.[10] This Court agrees. The purpose of the Rails to Trails Act is not to encourage the development of recreational trails near inactive railroad rights of way—it is to encourage the transition of these railbeds into recreational trails, and to preserve the right-of-way for possible future railroad reactivation.[11] In the case at bar, the STB has entered an order declaring that "interim trail use may be implemented" over the section of railbanked land at issue. (*See* Ex. 1 to Roberts Decl.) That the hearing examiner overturned the PAUE on the grounds that there are practical alternatives to location of the trail on the right-of-way demonstrates that this provision of the SMC "stands as a obstacle to the accomplishment and execution of the full purposes and objectives of Congress." As a result, the Court finds that 16 U.S.C. § 1247(d) preempts the application of SMC § 21A.50.070(2)(a) to any railbanked railroad right-of-way. Summary judgment in Plaintiffs' favor is necessitated as a matter of law.

## IV. CONCLUSION

In sum, the Court finds and rules as follows:

(1) Plaintiffs have standing to bring suit. Defendant City of Sammamish's Motion for Summary Judgment is DENIED.

---

10. Defendants attempt to discredit Plaintiffs preemption argument by pointing out several instances throughout the PAUE permitting process during which King County committed to complying with all state and local permitting requirements is unavailing. Implicit in these statements is a commitment to comply with all environmental regulations as they might be applied to the railbanked land. Indeed this is still a commitment Plaintiffs appear willing to make. (*See* Pls.' Mot. at 2:10–2:12, 16 n. 4.) By agreeing to comply with all permitting requirements as they relate to development of the trail on the railbanked land, Plaintiffs have not ceded their right to argue federal preemption of parts of these regulations that might require the County to locate the proposed trail elsewhere.

11. This decision squares with the reasoning of our sister court in Idaho, who addressed a strikingly similar set of facts. In *Blendu v. Friends of the Weiser River Trail, Inc.,* Civ. No. 98–0311–S–BLW, 1999 WL 33944266 (D. Idaho June 10, 1999) (Ex. 10 to Roberts Decl.) opponents of a proposed trail sought to enjoin trail use of a railbanked right-of-way on grounds that recreational use of the corridor was inconsistent with a county zoning ordinance. The district court held, "[t]he STB has...clearly indicated its intention to cede back to states and local governments the right to impose zoning and safety regulations on the trails *so long as those regulations do not interfere with* (1) the railroad's right to convert the corridor back into a railway at some point in the future and (2) *the trail managers's right and ability to maintain the right-of-way as a recreational trail in the interim*" (emphasis added). *Id.* at 11.

(2) King County is not a necessary party, Plaintiffs have stated a claim upon which relief can be granted, and application of the *Pullman* abstention doctrine is inappropriate. Defendant–Intervenor ELSCA's Motion for Summary Judgment is DENIED.

(3) U.S. Const. art. VI, cl. 2, 16 U.S.C. § 1247(d), and the September 16, 1998 decision of the Surface Transportation Board in *The Burlington Northern and Santa Fe Railway Company—Abandonment Exemption—In King County, WA.*, STB Docket No. AB–6 (Sub. No. 380X) preempt the application to any railbanked railroad right-of-way of those portions of Sammamish Municipal Code § 21A.50.070 that require an applicant for a Public Agency Utility Exception to show that "there is no practical alternative to the proposed development with less impact on sensitive areas." Plaintiffs' Motion for Summary Judgment is GRANTED.

(4) The Clerk is directed to enter judgment accordingly.

## ORDER

This matter comes before the Court on Intervenor–Defendant East Lake Sammamish Community Association's Motion for Reconsideration (Dkt. No. 73). ELSCA challenges the Court's January 5, 2005 Order granting summary judgment in favor of Plaintiffs. Specifically, ELSCA argues that the Court committed manifest error in declining to abstain, or, alternatively, that the Court erred by applying the incorrect legal standard to Plaintiffs' preemption challenge to the Sammamish Municipal Code § 21A.50.070. For the following reasons, ELSCA's Motion for Reconsideration is hereby DENIED.

 ELSCA asserts that it was manifest error for the Court to limit its abstention analysis solely to the doctrine set forth in *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).[1] Yet, even if the Court had considered the other myriad abstention doctrines, the result would have been the same. For example, had the Court considered *Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), it would have found abstention to be inappropriate in the case at bar. *Burford* abstention is appropriate where a case involves an unclear state law question of vital local concern, which must be addressed though a centralized unified state administrative system. *Id.* at 332, 63 S.Ct. 1098. It does not take a thorough recitation of the facts to realize that *Burford* is inapposite. It is simply enough to observe that, rather than involving a question of state law, the parties' dispute involved a question of preemption under federal law, thus it fails the first part of the *Burford* test. *See New Orleans Pub. Serv., Inc. v. New Orleans*, 491 U.S. 350, 362, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (finding that adjudication of plaintiff's federal preemption claim "would not disrupt the State's attempt to ensure uniformity in the treatment of an 'essentially local problem,' [citation omitted]."); *U.S. v. Com-*

---

1. This argument is based on the Ninth Circuit's reference in *Gilbertson v. Albright*, 381 F.3d 965 (9th Cir.2004), to the Supreme Court's observation that "the various types of abstention are not rigid pigeon-holes into which Federal Courts must try to fit cases [...]." *New Orleans Pub. Serv., Inc. v. New Orleans*, 491 U.S. 350, 359, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (internal citation omitted). (*See* Mot. for Recons. at 3.)

*monwealth of Kentucky,* 252 F.3d 816, 827 (6th Cir.2001) (finding *Burford* abstention not warranted where case involved a question of preemption under federal law, not a question of state law).

Moreover, abstention under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny would have likewise been inappropriate. Abstention under the principles of *Younger* is required upon demonstration of three factors: (1) there is an on-going state proceeding; (2) important state interests are implicated; and (3) the federal litigant is not barred from litigating federal constitutional issues in that proceeding. *Gilbertson v. Albright,* 381 F.3d 965, 978 (9th Cir.2004). "Direct interference" with the state court proceeding is no longer required as a condition of *Younger* abstention. *Id.* Here the first factor is satisfied since there is no dispute that the state court action was on-going when Plaintiffs filed this federal action. However, despite ELSCA's attempt to characterize the underlying issue as one affecting a state's land use decisions (an important state interest), the Court must look to the "importance of the generic proceedings to the state" rather than inquiring "into the substantiality of the State's interest in the *outcome* of the particular case." *NOPSI,* 491 U.S. at 365, 109 S.Ct. 2506 (emphasis in original). Upon such inquiry it becomes clear that the true issue at stake concerns regulation of the railroads, which includes regulation of railbanked rights-of-way. Given the pervasive federal regulation in this field,[2] this case clearly implicates important federal interests, rather than important state interests. *Cf. NOPSI,* 491

U.S. at 365, 109 S.Ct. 2506 (reiterating that regulation of utilities is "one of the most important of the functions traditionally associated with the police power of the States"). Because *Younger* abstention principles do not mandate abstention when the dispute does not implicate "important state interests" as refined by *NOPSI,* the Court did not err in declining to abstain from reaching the merits of Plaintiffs' federal preemption claim.

Finally, even consideration of *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), shows that abstention in this matter is not appropriate. *Colorado River,* and subsequent caselaw, emphasizes the discretionary nature of a federal court's decision to abstain from exercising validly conferred jurisdiction. *See id.* at 817, 96 S.Ct. 1236. Factors relevant to a court's decision to abstain include: (1) whether the state court or the federal court has assumed jurisdiction over the res or property; (2) which forum is more convenient to the parties; (3) whether abstention would avoid piecemeal litigation; (4) which court obtained jurisdiction first; and (5) whether federal law or state law provides the basis for the decision on the merits. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 15–16, 23, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). However, the "mere potential for conflict in the results of adjudications is not the kind of 'interference' that merits federal court abstention." *Green v. City of Tucson,* 255 F.3d 1086, 1097 (9th Cir.2001) (citing *Colorado River,* 424 U.S. at 816, 96 S.Ct. 1236) (internal quotations omitted). Important to the Supreme Court's holding in *Colorado River* were its findings of the extensive involve-

---

**2.** *See, e.g., Chicago v. N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 318, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981).

ment of state water rights in the claims before the parallel state and federal proceedings, and the existence of federal legislation reflecting a congressional policy to avoid piecemeal litigation in adjudicating water rights. *Colorado River,* 424 U.S. at 819–20, 96 S.Ct. 1236. Similar factors are notably absent from the case at bar. It would be inappropriate for the Court to rely on *Colorado River* as supporting abstention in this case.

█ Alternatively, ELSCA argues that the Court "overlooked the significant difference between a 'facial' and an 'as applied' challenge to legislation," (Mot. for Recons. at 5), thus the Court's Order was in manifest error. ELSCA correctly points out that the standard applied to a "facial" constitutional challenge is different from the standard used in an "as applied" constitutional challenge. (ELSCA's Mot. for Summ. J. at 14–16.) However, in granting summary judgment in favor of Plaintiffs, the Court found that the National Trails System Act, 16 U.S.C. § 1247(d), preempts the practical alternatives prong of the Sammamish Municipal Code § 21A.50.070 *each and every time* that requirement is used to prevent development of a trail on a railbanked right-of-way. In reaching this conclusion the Court appropriately focused on the standard applicable to a facial challenge. The fact that there may be only one railbanked right-of-way in the City of Sammamish does not convert Plaintiffs' facial challenge into an "as applied" challenge. The Court applied the correct legal standards in its preemption analysis.

In sum, the Court finds no error in its January 5, 2005 Order. For the aforementioned reasons, ELSCA's Motion for Reconsideration is DENIED.