**UFO CHUTING OF HAWAII, INC., a Hawaii corporation and K.M.B.S., Inc., a Hawaii Corporation, d.b.a. Kaanapali Tours, Plaintiffs,**

**v.**

**Peter T. YOUNG, in his capacity as Chair of the Board of Land and Natural Resources, State of Hawaii; Stephen Thompson, in his capacity as Acting Administrator, Division of Boating and Ocean Recreation, Department of Land and Natural Resources, State of Hawaii, Defendants.**

**Civ. No. 03–00651 SOM/BMK.**

United States District Court, D. Hawaiʻi.

May 5, 2005.

Dennis Niles, Tom Pierce, Paul Johnson Park & Niles, Wailuku, HI, Michael R. Cruise, Law Offices of Gerard A. Jervis, Kailua, HI, for Plaintiff.

Mark J. Bennett, Office of the Attorney General–Hawaii, William J. Wynhoff, Office of the Attorney General–State of Hawaii Kekuanao'A, Honolulu, HI, Harry Yee, Office of the United States Attorney, Honolulu, HI, Jimmy A. Rodriguez, Seth M. Barsky, U.S. Department of Justice Environment & Natural Resources Division, Washington, DC, for Defendant.

*ORDER GRANTING DEFENDANTS'*
*RENEWED MOTION FOR*
*SUMMARY JUDGMENT*

MOLLWAY, District Judge.

I. *INTRODUCTION.*

Defendants Peter Young and Stephen Thompson renew their motion for summary judgment on all remaining Counts of UFO's Second Amended Verified Complaint ("SAVC"). The court grants Defendants' motion.

II. *BACKGROUND.*

The facts of this case have recently been set forth in an order by this court filed May 5, 2005. The court incorporates by reference the "BACKGROUND" section of that order and adds the following:

In enacting Haw.Rev.Stat. § 200–37(i), the legislature relied in part on the following finding:

Continuous traffic and constant underwater noise created by thrill craft, parasailing vessels, and high-speed motorized vessels in near shore, shallow

waters threaten humpback whale population recovery by displacing the whales from their favored habitat and further by disrupting the acoustic environment, creating an energetic cost to the whales in responses to these disturbances, disrupting the species' mating system, and threatening the survival of calves.

H.B. 2994, 1990 Haw. Sess. Laws 972.

## III. *STANDARD OF REVIEW.*

The court further incorporates its standard of review for summary judgment from its May 5, 2005 order.

## IV. *ANALYSIS.*

In its May 5, 2005, order, this court granted Defendants' motion for summary judgment with respect to Count I of the SAVC. Defendants have renewed their motion for summary judgment with respect to UFO's claims under the "Dormant Commerce Clause." The parties have also agreed that the court may address at this time UFO's claims of "conflict preemption" with respect to UFO's federal maritime licenses. The court grants Defendants' motion for summary judgment.

### A. *UFO Does Not Raise Any Triable Issue Under The Dormant Commerce Clause.*

The Commerce Clause of the Constitution grants Congress the power to regulate "Commerce ... among the several states." The Commerce Clause implicitly provides that a State may not "jeopardiz[e] the welfare of the Nation as a whole by placing burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear." *Am. Trucking Ass'ns, Inc. v. Mich. Pub. Serv. Comm'n,* — U.S. —, —, 125 S.Ct. 2419, 2423, 162 L.Ed.2d 407 (2005). This implicit limitation is known as the "Dormant Commerce Clause."

A statute that, like Haw.Rev.Stat. § 200–37(i), is "facially neutral" with respect to interstate commerce violates the "Dormant Commerce Clause" only if "the burdens of the statute ... so outweigh the putative benefits as to make the statute unreasonable or irrational." *Alaska Airlines, Inc. v. City of Long Beach,* 951 F.2d 977, 983 (9th Cir.1991); *see also Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). "Such is the case where the asserted benefits of the statute are in fact illusory." *Alaska Airlines,* 951 F.2d at 983.

The federal courts grant state legislatures considerable deference in such inquiries. *See Pac. Northwest Venison Producers v. Smitch,* 20 F.3d 1008, 1017 (9th Cir.1994) ("Even in the context of dormant commerce clause analysis, the Supreme Court has frequently admonished that courts should not second-guess the empirical judgments of lawmakers concerning the utility of legislation."). States "are not required to convince the court of the correctness of their legislative judgments." *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981). Rather, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Id.; see also Lingle v. Chevron U.S.A., Inc.,* — U.S. —, —, 125 S.Ct. 2074, 2074, 161 L.Ed.2d 876 (2005) ("The reasons for deference to legislative judgments about the need for, and likely effectiveness of, regulatory actions are by now well established").

UFO does not raise any issue of fact as to whether the burden on interstate commerce is "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church,* 397 U.S. at 142, 90 S.Ct. 844.

UFO first contends that the benefits of the seasonal parasail ban are "illusory" because the State allegedly cannot prove that parasail operations threaten whale populations. UFO argues initially that the findings the State has made do not meet the standard of admissibility under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Ninth Circuit, however, has expressly rejected the suggestion that a legislature must apply the evidentiary standards of *Daubert* in considering whether evidence supports proposed legislation. *See Gammoh v. City of La Habra,* 395 F.3d 1114, 1127 (9th Cir. 2005) ("While we do not permit legislative bodies to rely on shoddy data, we also will not specify the methodological standards to which their evidence must conform."); *see also G.M. Enters., Inc. v. Town of St. Joseph, Wisc.,* 350 F.3d 631, 640 (7th Cir. 2003) ("A requirement of *Daubert*-quality evidence would impose an unreasonable burden on the legislative process").

In fact, the State had considerable evidence that the seasonal ban would protect humpback whales. The legislature received extensive testimony from interested parties, including scientists, community groups, and business groups. *See* Exs. B–F to Wynhoff Decl., filed February 26, 2004. The scientific testimony submitted in support of a seasonal ban stated, "Parasailing and thrill craft activities *by their nature* disrupt the calm of [humpback whale] nursery areas, and have forced the resting mothers and their newborns ...

away from their preferred habitat." Ex. B to Wynhoff Decl., filed February 26, 2004 (emphasis in original). According to other testimony, thrill craft and parasail boats were displacing whales from nearshore waters. *See* Ex. C to Wynhoff Decl., filed February 26, 2004.

UFO relies on an academic study by Drs. Whitlow Au and M. Green that concludes that "it is unlikely that the levels of sounds produced by the boats in our study would have any grave effects on the auditory system of humpback whales." UFO Ex. DN18. UFO contends that this study conclusively "debunks the assertion that the noise made by tow boats engaged in parasailing is capable of 'disrupting' the acoustical environment" of whales. UFO Opp. at 10.

The court does not agree that this study proves that the seasonal ban's benefits are illusory. First, in stating that it is "unlikely" there is an impact, Au and Green are not saying there is no impact. *See* UFO Ex. DN–18. Even if this study reached a supposedly definitive determination, the legislature had other studies reaching the opposite conclusion. This court will not here weigh the merits of competing scientific viewpoints and is not equipped to make such determinations. It is the job of the legislature to consider competing evidence when fashioning legislation.[1] One study that arguably cuts against the determination made by the legislature does not invalidate the statute's putative benefits.

---

1. The Au and Green study was published after the legislature enacted the parasailing ban and therefore was obviously not considered by it at the time. UFO contends that the court must consider the evolving conclusions of the scientific field. In assessing the reasonableness of legislative action, however, the key question is whether the legislature acted reasonably at the time the legislation was enacted. *See e.g., Smith Setzer & Sons, Inc. v.*

*South Carolina Procurement Review Panel,* 20 F.3d 1311, 1323 (4th Cir.1994) (noting that new evidence supposedly undercutting the effectiveness of a law should be addressed to the legislature, not a court) (citing *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (holding that the "judiciary may not sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations")).

UFO does not raise any triable issue of fact with respect to the legislature's decision. Instead, UFO appears to be asking this court to substitute its judgment for that of the legislature. Unless a statute or appellate court directs this court to perform that task, this court will not so act.

■ The court further notes that UFO has presented no evidence demonstrating the ban's impact on interstate commerce. UFO contends that it is the State's burden to show that the ban's benefit outweighs its effect on interstate commerce. UFO is incorrect. The party challenging the validity of a statute under the Commerce Clause has the burden of demonstrating that the burden on interstate commerce is clearly excessive to the benefit. *See S.D. Myers, Inc. v. City and County of San Francisco,* 253 F.3d 461, 471 (9th Cir.2001) (requiring the plaintiff to provide "specific details" as to how the local ordinance affected interstate commerce). UFO has not presented sufficient evidence to raise a question of fact as to whether the state law imposes clearly excessive burdens on interstate commerce.

**B.** *UFO Does Not Raise Any Triable Issue of Fact With Respect to Conflict Preemption.*

UFO further contends that the seasonal ban on parasailing "renders [their] vessels inoperable for any commercial purpose." UFO Opp. at 15. Comparing this case to the situation in *Young v. Coloma–Agaran,* 340 F.3d 1053, 1055 (9th Cir.2003), UFO argues that Haw.Rev.Stat. § 200–37(i) impermissibly restricts the coastwise trade of UFO's vessels in contravention of UFO's federal licenses.

**1.** *Haw.Rev.Stat. § 200–37(i) Is Not a Complete Ban On Coastwise Trade.*

■ In *Young,* the Ninth Circuit ruled that a state law banning commercial boating in Hanalei Bay violated the Supremacy Clause. *Id.* at 1057. Because the "ban completely exclude[d] the plaintiffs from conducting their federally licensed tour boat business in Hanalei Bay," it was preempted by their federal license permitting coastwise trade in Hanalei Bay. *Id.*

The present case is unlike *Young.* The state regulation in *Young* did not merely ban carrying passengers; it stated that no commercial permits would be issued for vessels to operate in Hanalei Bay, with the exception of two permits for commercial kayaks. *Young,* 340 F.3d at 1055. The regulation in *Young* banned virtually all commercial trade in Hanalei Bay and therefore conflicted with the plaintiffs' federal licenses allowing coastwise trade.

By contrast, Haw.Rev.Stat. § 200–37(i) prohibits parasailing and certain other forms of thrill craft activity. UFO's federal license gives it the right to engage in coastwise trade; it does not give it a federally created right to operate a parasailing business. The state regulation permits numerous commercial uses of the Lahaina–Kaanapali waterway, and UFO may engage in coastwise trade other than parasailing and thrill craft activity in those waters.

UFO notes that the statute in *Young* did not apply to "pleasure craft and fishing vessels temporarily anchored for a period of less than 72 hours." *See* Haw.Rev.Stat. § 200–6(b). UFO therefore contends that, as in *Young,* the availability to UFO of other commercial activities in the Lahaina–Kaanapali waterway does not prevent section 200–37(i) from being an unconstitutional complete ban. The Ninth Circuit in *Young,* however, declined to address the effect of the provision on pleasure craft and fishing vessels, noting that the parties had not briefed the issue. *See* 340 F.3d at 1057 n. 1. Thus, in finding a complete ban, the Ninth Circuit was proceeding as if pleasure craft and fishing vessels were not

allowed. Here, by contrast, the parties have fully briefed the availability of other uses, and this court is taking those other uses into account.

UFO's argument goes too far. If boats specifically built for parasailing may not be precluded from being used for parasailing, parties could circumvent otherwise reasonable and permissible regulations through their boat designs. For example, a state would then be prevented from enforcing speed regulations on boats that were specifically built for racing and that could only be operated profitably as racing boats. UFO's federal license allows it to engage in coastwise trade; it does not allow it to engage in the most profitable type of coastwise trade given its type of vessels. UFO's vessels can conduct commercial activity in the Lahaina–Kaanapali waterway; their federal licenses provide no further rights.

UFO's reliance on *Waste Management Holdings, Inc. v. Gilmore,* 252 F.3d 316 (4th Cir.2001), is unavailing. In that case, the Fourth Circuit ruled that a regulation that prohibited federally licensed barges from transporting any type or any amount of solid waste on three rivers in Virginia "completely excludes federally licensed commerce." *Id.* at 348. UFO contends that a ban on hauling waste, though not necessarily restricting other commercial activity on the rivers, is indistinguishable from a ban on parasailing, which still allows for other types of commercial activity.

The Fourth Circuit in *Waste Management,* however, did not actually consider the regulation to be a complete ban on licensed commerce, despite the court's reference to a complete exclusion. Immediately after declaring that the ban "completely excludes" federally licensed commerce, the court continued, "The reasonableness of such a *complete ban* is simply not supported by the evidence in the record, even when viewed in the light

most favorable to the Defendants." *Waste Management,* 252 F.3d at 348 (emphasis added). Had the ban been complete, the reasonableness of the regulation would have been irrelevant. Once a court finds a ban complete, its inquiry ends. *See Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963) ("That no State may complete exclude federally licensed commerce is indisputable"); *see also Young,* 340 F.3d at 1057 (declining to analyze the reasonableness of the Hanalei Bay restriction upon finding the restriction's complete ban to be in conflict with federal law). The Fourth Circuit's analysis of the reasonableness of the regulation implicitly recognized that the regulation was not a complete ban.

2. *Haw.Rev.Stat. § 200–37(i) Is Reasonable and Nondiscriminatory.*

Under *Young,* state regulation may also conflict with a federal license if that regulation is unreasonable or discriminatory. *Id.* at 1056–57. This court, however, has already determined that Haw.Rev.Stat. § 200–37(i) is reasonable and nondiscriminatory. *See* May 5, 2005, Order at 13 (Haw. Rev.Stat. § 200–37(i) passes rational basis review).

V. *CONCLUSION.*

Defendants' motion for summary judgment is granted. This order disposes of all remaining claims raised by the Second Amended Complaint. The Clerk of Court is directed to enter judgment in favor of Defendants.

IT IS SO ORDERED.